David LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–258–CR.

Court of Appeals of Texas,
Austin.

July 11, 1990.

Rehearing Overruled Aug. 1, 1990.

Discretionary Review Granted
Oct. 3, 1990.

Terrence W. Kirk, Austin, for appellant.

Ronald Earle, Dist. Atty., Terrence Keel, Gail Van Winkle, Asst. Dist. Attys., for appellee.

Before POWERS, JONES and ONION,* JJ.

ONION, Justice (Retired).

This is an appeal from a conviction for murder. Tex.Pen.Code Ann. § 19.02(a)(1) (1989). After the jury's verdict finding the appellant guilty, the trial court assessed punishment at life imprisonment in the Texas Department of Corrections.[1]

Appellant advances five points of error. We are confronted at the outset with perhaps the most serious question in the case —appellant's initial contention that the trial court erred in refusing to declare a mistrial when the prosecutor commented on his failure to testify at the guilt stage of the trial. We will sustain this first point of error and accordingly reverse the conviction.

On February 4, 1988, the appellant was indicted for the murder of Cydney Myers, which offense was alleged to have occurred over eight years before, on June 25, 1979. Appellant entered a plea of not guilty. The State's case was based entirely on circumstantial evidence.

Although the sufficiency of the evidence to support the conviction is not challenged, we shall briefly set forth some of the facts to place the appellant's contention in proper perspective. On the morning of June 26, 1979, the body of the deceased, 20–year–old Cydney Myers, was found in her car parked behind the "Still" nightclub on Guadalupe Street in Austin. She had been beaten and strangled to death with a ligature. After death, the body had been raped and sodomized, and then redressed with the exception of the panties. There were carpet burns on the body, and the police officers determined that the offense had not occurred in the deceased's car or in her Austin residence.

Testimony revolved around a small group who became friends in high school and maintained their contacts with each other until the time of the alleged offense. The group included the deceased, her boyfriend, David Menefee, the appellant Lopez, David Richburg, Perry Durkee, and others. In 1979, Menefee and the deceased, Cydney Myers, were living together at 1208 Justin Lane in Austin. The appellant Lopez needed a place to stay and Menefee permitted Lopez to move to 1208 Justin Lane. Appellant's presence soon presented a problem because of the lack of privacy, especially with regard to the couple's sex life, and because of his failure to maintain steady employment and to pay his share of expenses, and the fact he frequently stayed around the house all day. On one occasion Menefee returned home to find the appellant cooking some of Menefee's food. Appellant left that day taking some of his personal belongings with him. Menefee described the parting as one of mutual understanding.

Thereafter, Menefee and a co-worker, Bill Coffey, accepted employment to do seismic exploration in Alaska. It was decided that Coffey's wife, Sherry, would live with Cydney at the Justin Street address. Later, Coffey's brother, Mike, age 17,

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

1. The Department of Corrections is now the Institutional Division of the Texas Department of Criminal Justice. 1989 Tex.Gen.Laws, ch. 785, § 1.19(f) at 3475.

moved to the same address. He was a co-worker at a construction site with the appellant Lopez. The weekend before the alleged offense on June 25, 1979, Mike and Sherry Coffey left for a vacation in their home town of Hooks.

Menefee testified that during the same weekend he telephoned Cydney from Alaska, telling her that marihuana was scarce in Alaska, and that she should soon be receiving a certified letter from him containing money. He told no one else of his conversation with Cydney. Mary Kopp Vinson testified that on Sunday of that weekend she received a telephone call from Cydney, the deceased, inquiring about where some marihuana might be obtained. Vinson, who had previously lived with the appellant, could not remember exactly to whom she directed Cydney to obtain marihuana, but she could not rule out the appellant.

Toni Centeno, a next door neighbor, testified that early in the evening of Monday, June 25, 1979, she saw Cydney in her backyard garden, and that Cydney's car was parked in the driveway; that shortly thereafter she saw the appellant knock on the front door of Cydney's residence, and then walk to the rear of the house.

In a later statement to the police, appellant stated he had not seen the deceased since March 1979. When confronted with the neighbor's account, he admitted he went to the deceased's residence on June 25, 1979, to obtain Menefee's address in Alaska, but he found no one at home.

David Richburg routinely gave the appellant a ride to the job site where they both worked. On Tuesday, June 26, 1979, Richburg found that appellant was not at his South Austin apartment when he came to pick him up. When Richburg arrived at the job site that morning, the appellant was already there. Later in the day after a television report of the discovery of Cydney's body, appellant and Richburg went to the home of Cydney's parents. While there, appellant asked Cydney's aunt if anyone knew of a letter from David Menefee.

Daniel Rodriguez, some eight months or so after the alleged offense, saw a Crime Stoppers reenactment of the offense on television. Rodriguez testified that he reported to the police that about 10:30 p.m., on June 25, 1979, he saw a vehicle with personalized license plates "Cyd M" being driven by a female with blonde hair, with a dark-haired male passenger in the front seat; that the couple appeared to be engaged in "a heavy argument" that the vehicle was moving slowly, holding up traffic; and that the vehicle eventually turned off of Guadalupe Street, but Rodriguez could not recall where. A photographic spread was displayed to Rodriguez, and he selected a front and side view of the appellant as closely resembling the male passenger. He identified the victim's car as the one he saw travelling on Guadalupe Street.

Dr. Edward Blake, a forensic serologist, and a partner in the Forensic Science Associates in Richmond, California, testified he used his "PCR" test to amplify DNA from over eight-year-old semen stains on the pants of the deceased to compare with samples taken from the appellant. The result, Blake revealed, eliminated 89% of the population as suspects, but that the appellant fell within the remaining 11% of the population with "possible responsibility." He further testified that when the results of blood tests by the Department of Corrections were combined with his test the appellant fell within 5% of the population that could not be ruled out as the possible perpetrator.

The appellant offered testimony, but did not personally testify.

In the closing argument at the guilt stage of the trial, the prosecutor told the jury that "typically" in a murder case there are only two people, one is dead, and the other is a murderer. He then added:

That's the situation you have here in this case. There is one person that didn't get to speak to you today and tell you her side of the story and that is my client, and her name is Cydney Myers. And that was what Cydney Myers looked like back in 1979, and this is what she looked like after David Lopez got through with

her. I apologize that I can't call her to the stand. But that's the way murders occur. They do not occur at 12:00 noon on the Capitol steps. They occur in apartments where nobody else is and bodies are dumped at places to cause people to look at different leads.

Now, I also want to remind you that the State need not prove a motive in this case. You remember that at voir dire, [*sic*] nothing in that charge requires us to prove a motive. *I submit to you there is, however, a motive for this killing. David Lopez knows that motive. But the State cannot and is not held to show you that motive. The State cannot bring it to you. I submit to you there is a motive in this case.*

Mr. Morris (Defense Counsel): Your Honor, may we approach the bench?

(Bench discussion out of jury hearing)

Mr. Morris: I object to the statement that David Lopez knows the motive as being a comment on the facts [sic] the Defendant's failure to testify. Can I object to the statement that David Lopez knows the motive and the statement after that about what the State can or can't do as being a comment on the Defendant's failure to testify?

The Court: All right. I'll sustain the objection.

(Following in the hearing of the jury) Ladies and gentlemen of the jury, you will not consider the fact statement of the prosecutor for any purpose.

Mr. Morris: And move for a mistrial.

The Court: Denied.

(Emphasis supplied.)

The appellant timely objected, the court instructed the jury to disregard, and the appellant moved for a mistrial, which was denied. There is no question but that the appellant preserved the error.

■ It is basic and fundamental law in this State that the failure of an accused in a criminal case to testify may not be the subject of comment by the prosecution, for such comment is in violation of the privilege against self-incrimination in Article I, § 10 of the Texas Constitution and the Fifth Amendment to the United States Con-

stitution made applicable to the States by the Fourteenth Amendment. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Allen v. State*, 693 S.W.2d 380, 381 (Tex.Cr.App.1984); *Bird v. State*, 527 S.W.2d 891, 893 (Tex.Cr.App. 1975). Further, such a comment is also in violation of Tex.Code Cr.P.Ann. art. 38.08, a mandatory statute. *See Montoya v. State*, 744 S.W.2d 15 (Tex.Cr.App.1987), cert. denied, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). The test to be applied to determine whether there has been a violation by a prosecuting attorney is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Allen*, 693 S.W.2d at 381; *Nickens v. State*, 604 S.W.2d 101, 105 (Tex.Cr.App.1980).

■ The comment in the instant case was clear and direct. *See Mercer v. State*, 658 S.W.2d 170 (Tex.Cr.App.1983). In oral argument before this Court, the prosecuting attorney candidly admitted his remarks were a comment on the appellant's failure to testify. In addition, it has been repeatedly held that reference to motive is a prohibited comment on a defendant's failure to testify. *Lee v. State*, 628 S.W.2d 70 (Tex.Cr.App.1982); *Franks v. State*, 574 S.W.2d 124 (Tex.Cr.App.1978); *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App.1975); *Minton v. State*, 162 Tex.Crim. 358, 285 S.W.2d 760 (1956). Here the direct comment referred to motive and stated that the appellant had knowledge thereof, and was in effect the only one who could produce it for the jury. *See Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982); *Myers v. State*, 573 S.W.2d 19 (Tex.Cr.App.1978).

■ The State urges that the error was cured by the court's instruction to disregard. The prohibition against a comment on the accused's failure to testify is mandatory and the adverse effect of any reference to such failure is not generally cured by an instruction to disregard. *Montoya*, 744 S.W.2d at 37; *Gardner v. State*, 730 S.W.2d 675, 700 n. 13 (Tex.Cr.App.),

cert. denied, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Owen v. State,* 656 S.W.2d 458 (Tex.Cr.App.1983); *Overstreet v. State,* 470 S.W.2d 653 (Tex.Cr.App.1971); *Lankford v. State,* 156 Tex.Crim. 113, 239 S.W.2d 394 (1951); *see also* 21 Tex.Jur.3d Criminal Law § 1586, at 351–355 (1982). It must be remembered that the comment here was not merely an indirect or implied allusion to the failure to testify. The State, however, urges that even a direct comment can be rendered harmless by a severe admonishment to disregard. *Davis v. State,* 645 S.W.2d 817, 819 (Tex.Cr.App. 1983). The instant instruction was a formal one, but it did not even touch on the absolute impropriety of the statement. *Davis,* 645 S.W.2d at 819. It was not sufficient to render harmless the adverse effect of the direct and apparently intended comment. *See Johnson v. State,* 611 S.W.2d 649, 650–51 (Tex.Cr.App.1981).

 The State further urges that the complained-of argument was invited and in response to the argument of appellant's counsel. It is well settled that the prosecutor may answer jury argument by opposing counsel so long as the response does not exceed the scope of the invitation. *Andujo v. State,* 755 S.W.2d 138, 144 (Tex.Cr.App. 1988); *Johnson,* 611 S.W.2d at 650. The invitation may even properly include a comment on the defendant's failure to testify. *Porter v. State,* 601 S.W.2d 721, 723 (Tex. Cr.App.1980); *see also Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Cr.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Broussard v. State,* 505 S.W.2d 282, 286 (Tex.Cr.App.1974).

The State's brief selects two portions of the opening argument of defense counsel at the guilt stage of the trial as the "invitation." First, while discussing the various facts in evidence, defense counsel (Mr. White) argued:

You wait and you say, well, what kind of evidence do we have against David, that someone had the impression that Cyd— Cydney Myers didn't like him? I wouldn't have liked him either if he was around my house and wasn't working. This is not the same thing as killing and raping and sodomizing some other human being. What is there to show any evidence of that kind of behavior? But show any evidence of that kind of behavior? But loe [*sic*] let's see, let's talk about Mr. Rodriguez....

Second, in concluding the opening argument, defense counsel stated:

Well, I am going to sit down now and let Mr. Morris speak to you. I am telling you again, we have a 31 year old man who has been here for the last nine years who has a wife and three kids who has remained here in this area, who gets indicted, lo these eight years later and then we have a woman who he hasn't had trouble with, trouble and this woman is brutalized and beaten and roped burned and rug burned and sodomized and raped after death.

Appellant's counsel did not attempt to explain away or otherwise minimize the significance of the appellant's failure to testify, or attempt an agreement in favor of his client based on the failure to testify, which might have extended an invitation to the prosecution. *See Franks,* 574 S.W.2d 127 (Tex.Cr.App.1978). The State relies upon *Nethery,* 692 S.W.2d at 704. There, unlike the instant case, the defense counsel expressly referred to "motive" in his argument insinuating that because no motive was shown that perhaps the defendant did not shoot the officers. Reference was also made as to the defendant's knowledge that he was "facing two police officers." In *Nethery,* the court held that the prosecutor's comment on the failure of the defendant to testify was invited, though the court observed that the prosecutor may have "pushed the point" and "overemphasized the motive issue." We do not agree that *Nethery* is controlling here, given the difference in the facts and the jury argument.

The remarks of appellant's counsel, that the State alleges constituted the "invitation," must be considered in the context in which they were made, not as excerpts. They were made while counsel was discussing the facts in evidence before the jury or drawing reasonable inferences therefrom,

which he had a right to do. If there was any invitation at all, the prosecutor in his response far exceeded the scope of any invitation by going outside the record. We reject the State's contention that the error was invited error.

■ We must now determine if the error was harmful to the appellant under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (applicable to the federal constitutional error) and under Tex. R..App.P.Ann. 81(b)(2) (Pamp.1990)[2] (state harmless error rule) applicable to jury argument error. *Orona v. State*, (Tex.Cr. App., No. 1228–87, May 16, 1990). 791 S.W.2d 125. The test to be applied under either standard is that the appellate court must determine beyond a reasonable doubt that the error did not contribute to the verdict. *See* and *cf. Cook v. State*, 702 S.W.2d 597, 601 (Tex.Cr.App.1985). To make that determination the record as a whole must be examined. The issue of harm must be determined from the facts of each individual case and resolved according to the probable effect of the argument upon the minds of the jurors, and in light of the existence of the other evidence in the record.[3]

The error here is one in jury argument at the guilt stage of the bifurcated trial. The argument was violative of a mandatory state statute, and the error was of constitu-tional dimension, both federal and state. The comment was direct and flagrant, made in reference to motive and improperly implying to the jury that the appellant alone could furnish that evidence. The prosecutor stated in effect that he knew the motive,[4] but could not "bring it to you."[5]

As we have seen, the prosecutor's remarks were uninvited, and were of such adverse effect and inflammatory character that an instruction to disregard was insufficient to cure the error. The case was one of circumstantial evidence, not one of overwhelming guilt. The impermissible comments were made at the conclusion of the State's argument and commencement of the jury's deliberations on the issue of guilt. The error was compounded by the prosecutor's improper argument that the State had knowledge of motive not available to the jury. We are unable to declare beyond a reasonable doubt that the error did not contribute to the jury's verdict of guilty.

The prohibition against commenting on a defendant's failure to testify is basic hornbook law. *Thompson v. State*, 651 S.W.2d 785, 786 (Tex.Cr.App.1983). The prosecution should have known from the very beginning that it was skating on thin ice and jeopardizing its own case. Under the circumstances, the State has given this Court no choice under the law. The conviction

**2.** Rule 81(b)(2) provides:

(2) *Criminal Cases* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment.

**3.** We are aware of the analysis of Rule 81(b)(2) in *Belyeu v. State*, No. 69–654, Tex.Cr.App., September 27, 1989 791 S.W.2d 66 and *Harris v. State*, Tex.Cr.App.1989, 790 S.W.2d 568 and have kept those guidelines in mind in consideration of the question presented. *See also Orona v. State*, Tex.Cr.App.1990. 791 S.W.2d 125.

**4.** From the record, briefs and the prosecutor's oral argument before this Court, we learn that the "motive" was actually evidence excluded by the trial court upon defense objection that the appellant had smoked marihuana, "dropped acid" and drank beer while he was in high school; that his emotions were subject to change when he was under the influence of drugs; that appellant smoked marihuana with Menefee when he lived at 1208 Justin Lane, and that he had engaged in inappropriate behavior with a friend's wife, and that he had once asked David Richburg for a Demerol pill some time after the alleged offense. The State in its brief now admits the trial court was correct in its evidentiary rulings on these extraneous matters.

**5.** It is the duty of trial counsel to confine the arguments to the record. 23 Tex.Jur.3d Criminal Law § 2903, at 708–709 (1982). It is improper for the prosecutor to imply to the jury that there is pertinent evidence of which he is aware that is not in the record. *Little v. State*, 567 S.W.2d 502 (Tex.Cr.App.1978); *Curlin v. State*, 500 S.W.2d 141 (Tex.Cr.App.1973). The argument here that the State had information not available to the jury was clearly error, and it was not invited by appellant's counsel.

must be reversed. Appellant's first point of error is sustained.

In view of our disposition of this cause, we need not reach appellant's other points of error.

The judgment of conviction is reversed and the cause remanded.