Thomas Dale BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-90-00664-CR.

Court of Appeals of Texas, Dallas.

July 25, 1991.

Rehearing Overruled Sept. 11, 1991.

Blake Withrow, Dallas, for appellant.

Kathleen A. Walsh, Dallas, for appellee.

Before WHITHAM, KINKEADE and WHITTINGTON, JJ.

KINKEADE, Justice.

## OPINION

Thomas Dale Brown appeals his conviction for aggravated robbery. After a jury trial, the court assessed punishment at seventy-five years' confinement, enhanced by one prior conviction. In eleven points of error, Brown contends that the trial court erred when it (1) overruled his objections and denied his motion for mistrial based on the State's improper bolstering of its witnesses' testimony, (2) overruled his objections and denied his motions for mistrial based on the State's improper jury arguments, and (3) admitted his book-in photograph into evidence. Because the trial court erred when it denied Brown's motion for mistrial based on the State's improper jury argument, we reverse the trial court's judgment and remand this cause for a new trial.

## FACTS

At trial, the jury found Brown guilty of aggravated robbery. Brown claims that during the guilt-innocence stage of trial, the State made an impermissible comment on his failure to testify. Brown complains of the following portion of the State's jury argument:

[State]: ... *Well, we don't know what he sounds like when he talks.* We know he has a gold tooth. Big deal.

[Defense]: I'm going to have to object, Your Honor. That's a comment on the defendant's failure to testify.

[State]: I'm answering the defense attorney's own closing argument.

The court sustained the objection, admonished the jury to disregard, and denied Brown's motion for mistrial.

## JURY ARGUMENT

In his seventh point of error, Brown contends that the trial court erred when it denied his motion for mistrial. Brown argues that the prosecutor impermissibly commented on his failure to testify.

■ A violation of both our state and federal constitutions occurs when a prosecutor comments on an accused's failure to testify. *Jones v. State,* 693 S.W.2d 406, 407 (Tex.Crim.App.1985). In addition, article 38.08 of the Texas Code of Criminal Procedure expressly prohibits a prosecutor from alluding to or commenting on an accused's exercise of his right not to testify. *Escort v. State,* 713 S.W.2d 733, 738 (Tex. App.—Corpus Christi 1986, no pet.) (citing *Owen v. State,* 656 S.W.2d 458, 459 (Tex. Crim.App.1983)); *see* TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1966). The prohibition against commenting on a defendant's silence at trial remains mandatory, and an instruction rarely cures the error. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim. App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988).

■ In evaluating a prosecutor's argument to determine if it commented on the accused's failure to testify, we view the language from the standpoint of the jury. *Jones,* 693 S.W.2d at 407. Comments on the accused's silence are judged first by their clear meaning, rather than their meaning in context. *Mason v. State,* 668 S.W.2d 726, 727 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). We evaluate comments that may infringe the accused's right to silence in context only when they are indirect or merely allude to the accused's failure to testify. *Id.* We must determine whether the language used was manifestly intended or from its character the jury would naturally and necessarily take the statement as a comment on the defendant's failure to testify. *Madden v. State,* 799 S.W.2d 683, 699 (Tex.Crim.App. 1990). In applying this standard, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Id.*

■ This Court must reverse the conviction if the prosecutor makes an impermissible comment on the accused's failure to testify and directs the jury's attention to the absence of evidence that only the defendant could supply. *See Gardner v. State,* 730 S.W.2d 675, 700 (Tex.Crim.App. 1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Cook v. State,* 702 S.W.2d 597, 600 (Tex.Crim.App.1984) (op. on reh'g) (prosecutor's use of "I" when referring to defenses the accused could have raised constituted an impermissible comment on the accused's failure to testify); *Thompson v. State,* 651 S.W.2d 785, 787 (Tex.Crim.App.1983) (prosecutor committed reversible error by stating "there is one person we haven't heard from" and gesturing toward the accused); *Lee v. State,* 628 S.W.2d 70, 71 (Tex.Crim.App. [Panel Op.] 1982) (prosecutor erred in commenting on the accused's failure to explain why he possessed a firearm).

■ Implied or indirect comments on the accused's failure to testify need not necessarily result in reversal. *See Montoya,* 744 S.W.2d at 35. A prosecutor's indirect comment concerning the accused's failure to produce testimony from sources other than himself is not reversible error. *Nowlin v. State,* 507 S.W.2d 534, 536 (Tex.Crim.App. 1974). Further, a prosecutor's indirect comment that directs the jury's attention to the courtroom demeanor of the accused may not require reversal. *Good v. State,* 723 S.W.2d 734, 737 n. 4 (Tex.Crim.App. 1986).

■ The prosecutor's comment in this case was clear and direct. *See Mercer v. State,* 658 S.W.2d 170, 171 (Tex.Crim.App. 1983). The prosecutor's argument necessarily referred to Brown and the absence of Brown's testimony regarding the circumstances of the charged offense. The jury could only interpret the prosecutor's remarks as comments on Brown's choice not to testify at trial. *See Mason,* 668 S.W.2d at 727. Brown was the *only* witness capable of revealing to the jury "what he sounds like when he talks" and the prosecutor's remarks improperly called into question Brown's right to remain silent.

We cannot reasonably construe the prosecutor's language as referring to Brown's failure to produce testimony other than his own. *See Nowlin,* 507 S.W.2d at 536. Further, the prosecutor's language fails to fall within any of the permissible perimeters of jury argument. Our law requires that the State's jury argument must fall into one of four categories (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) response to defendant's argument, and (4) plea for law enforcement. *Briddle v. State,* 742 S.W.2d 379, 389 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). Here, the prosecutor's argument demonstrates a classic example of prohibited argument, and the court could not cure the argument's prejudicial effect with its instruction to disregard. *See Montoya,* 744 S.W.2d at 37.

We must now do a harm analysis pursuant to rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Madden,* 799 S.W.2d 683 at 700. The record reflects that the jury convicted Brown of aggravated robbery under section 29.03(a)(2) of the Texas Penal Code, with punishment enhanced by a prior felony conviction. Brown pled true to the enhancement paragraph of the indictment. Brown elected to have the trial court assess punishment if the jury found him guilty of the charged offense. The jury found Brown guilty and the court assessed his punishment at seventy-five years' confinement.

■■■ We must consider whether, in light of the record as a whole, there is a reasonable possibility that the improper prosecutorial argument might have contributed to Brown's conviction or punishment. *Orona v. State,* 791 S.W.2d 125, 128 (Tex. Crim.App.1990). In making our determination, we must trace the error's impact on the jury in light of the error's interaction with the other evidence. By isolating the error and all its effects, we consider (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications, (5) how much weight a juror would probably place on the

error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. It is the error's effect and not the existence of overwhelming evidence or the lack thereof that dictates our judgment. *Orona,* 791 S.W.2d at 130. However, overwhelming evidence of guilt is a variable to be calculated. *Id.*

Applying these standards to this case, we cannot conclude beyond a reasonable doubt that the improper prosecutorial argument did not contribute to Brown's conviction. The record reflects that the prosecutor tainted the guilt-innocence phase of Brown's trial by improperly commenting on Brown's failure to testify. The prosecutor's remarks improperly directed the jury's attention to Brown's invocation of his right not to testify. The natural and necessary implications of the prosecutor's comments include (1) disrupting the jury's orderly evaluation of the evidence, (2) causing prejudice to the jury's decision-making, and (3) denying Brown's right to a fair and impartial trial.

Further, the other evidence at trial failed to dissipate the tainted effect of the State's improper jury argument on the jury's determination of Brown's guilt or innocence. We conclude that to declare this improper prosecutorial argument harmless would encourage the State to repeat it with impunity. Because the record reflects that the error's impact manifestly harmed the jury's decision-making, we cannot conclude beyond a reasonable doubt that the error did not contribute to Brown's conviction. We sustain Brown's seventh point of error.

Because of our disposition of Brown's seventh point of error, we need not address his remaining points of error.

We reverse the trial court's judgment and remand this cause for a new trial.

WHITTINGTON, J., dissents.

WHITTINGTON, Justice, dissenting.

I respectfully dissent.

In closing argument, defense counsel commented to the jury that the State's proof never disclosed that the robber had a gold tooth:

One other thing, he's got a gold tooth right here. . . .

That's natural to him, now. I mean, *if he's talking to someone or whatever, you know that tooth is going to be showing.* It's not something where he's going to be talking and saying, yes, we're just here to dive in. . . . No, *he talked to that woman.* He was giving orders. Can you imagine, on the other side, if that woman had said the man had a gold tooth, they would have crammed that down our throats so far it would not be funny. Surprise, surprise, guess who's got a gold tooth, Mr. Manasco. Give us the same consideration. He's got a gold tooth and *not one person said anything about it.* (Emphasis added.)

The State then responded to the defense counsel's rhetorical challenge as follows:

Now, the Defendant Brown, after he jumped over the counter, made some statement, 'Show me where the safe is,' 'Stop jacking around,' things of that nature, and the Defense wants you to believe that, well, they didn't see a gold tooth. Nobody got up here on the stand and told you that his client, the Defendant Brown, had a gold tooth and, therefore, it must not have been him. Well, we don't know what he sounds like when he talks. We know he has a gold tooth. Big deal.

I view the State's comments in closing argument acknowledging that Brown had a gold tooth and that there was no identification of Brown's voice as reasonable deductions made from the evidence and as appropriate responses to the arguments of opposing counsel. *See Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex. Crim.App.1973). Viewing the words from the jury's standpoint, I do not find the language a comment on Brown's failure to testify. *See Madden v. State,* 799 S.W.2d 683, 699–700 (Tex.Crim.App.1990). "A mere implication or indirect allusion to a defendant's failure to testify will not result

in reversible error." *Stoker v. State,* 788 S.W.2d 1, 17 (Tex.Crim.App.1989) cert. denied, —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Additionally, the language did not call the jury's attention to the absence of evidence that only Brown's testimony could supply. *See Madden,* 799 S.W.2d at 699.

Rather than being a direct comment on Brown's failure to testify, the comment was made in a summation of evidence regarding identity. Brown had a gold tooth that the complainant did not mention when identifying Brown. A gold tooth is a physical characteristic that can be an identifying tool. *See McQueen v. State,* 627 S.W.2d 757, 758 (Tex.App.—Waco 1981, no pet.). I would analogize references to Brown's tooth to a tattoo or a scar. A defendant can even be ordered to uncover a tattoo on his body. *DeLeon v. State,* 758 S.W.2d 621, 625 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

"It is well settled that the prosecutor may answer jury argument by opposing counsel so long as the response does not exceed the scope of the invitation." *Lopez v. State,* 793 S.W.2d 738, 742 (Tex.App.— Austin 1990) review dism'd as improvidently granted, 810 S.W.2d 401 (Tex.Crim.App. 1991). The invitation may even properly include a comment on the defendant's failure to testify. *Lopez,* 793 S.W.2d at 742.

The reference to what Brown "sounds like" was a response to the defense counsel's evidence. Defense counsel had stressed that Brown's gold tooth was an identifying factor. Two defense witnesses, Brown's sister and his mother, testified that Brown was very proud of his gold tooth, which he had received for his sixteenth birthday. After questioning Brown's mother, the defense counsel got permission "to allow my client to stand and open his mouth just so the jury can see that he does, in fact, have a gold tooth." Brown then stood before the jury, opened his mouth, and displayed his gold tooth for all to see.

I do not consider these statements to exceed the scope of the defense counsel's

invitation. The State stayed within the record in responding to the defense witnesses' information about Brown's having a gold tooth and the reference to "what he sounds like when he talks" must be considered in that context.

Even if the comments were error, I consider the error to have been harmless under rule 81(b)(2) of the Texas Rules of Appellate Procedure. TEX.R.APP.P. 81(b)(2); *Madden*, 799 S.W.2d at 700. A full review of the record discloses that the State was not intentionally attempting to taint the trial process with improper argument. The State made only a passing reference to what Brown sounded like when he talked. It made the remark in response to testimony presented by Brown's mother and sister regarding the gold tooth and the defense that Brown did not rob the store because the complainant never mentioned that the robber had a gold tooth. Defense counsel himself described Brown's talking to the complainant and asked the jury to consider the fact that Brown's tooth would be showing *when he is talking*. Defense counsel *himself* focused the jury's attention on Brown's failure to testify, if such occurred at all.

After the judge sustained the objection to the State's argument, he admonished the jury to disregard the statement. Since the State did not emphasize or reinforce its comment about not knowing how Brown sounded, the statement's impact on the jury was minimal. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The general reference did not attempt to call the jury's attention to the absence of evidence that only Brown could supply, because Brown's mother and sister had already supplied evidence that Brown had a gold tooth. The State was focusing not on Brown's failure to testify, but on the circumstance of his having a gold tooth that could have been seen and remembered when he said, "Show me where the safe is, stop jacking around." Affirming the judgment would not encourage the State to repeat its actions with impunity. *Harris*,

790 S.W.2d at 589. Accordingly, I would affirm the trial court's judgment.