

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00135-CR

TRENT ARCHIE,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 12th District Court
Walker County, Texas
Trial Court No. 22768

# OPINION

A jury convicted Trent Archie of murder. The trial court sentenced him to forty years in prison. On appeal, he challenges: (1) the denial of his motion for mistrial; (2) the admission of testimony and evidence from a jailhouse informant; and (3) the legal and factual sufficiency of the evidence. We reverse and remand.

## LEGAL SUFFICIENCY

In issue three, Archie challenges the legal sufficiency of the evidence to support his conviction.[1]

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

Dixie Dean Willis, Jr., Archie's co-defendant, testified that Archie wanted to steal drugs and money from the victim, Anthony Williams. Willis testified that Archie was in possession of a .12-gauge shotgun and planned to distract Williams while Willis went inside to take the items. Archie promised to shoot Williams if he "gets tripping." Archie led the way to Williams's home. Willis walked to the back of the house. He suddenly heard a gunshot. He began running and Archie followed.

---

[1]     We first address Archie's legal sufficiency challenge because it would afford him the greatest relief if sustained. *See Nickerson v. State*, 69 S.W.3d 661, 668 (Tex. App.—Waco 2002 pet. ref'd); *see also Hernandez v. State*, 268 S.W.3d 176, 178 (Tex. App.—Corpus Christi 2008, no pet.).

A few days later, Officer Jason Moore attempted to initiate a traffic stop of a maroon Buick. The driver fled on foot. The vehicle belonged to Archie's girlfriend. Jessica James testified that she overheard Archie tell a group of men that he "just canceled a guy in Huntsville through a window" because "he was moving in on my turf." Willis's girlfriend testified that he had confessed that he and Archie killed someone. She and her roommate had found the shotgun hidden in a closet in their home. Per Archie's instructions, Willis buried the shotgun.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found, beyond a reasonable doubt, that Archie committed the offense of murder. *See Curry*, 30 S.W.3d at 406; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789. The evidence is legally sufficient to support Archie's conviction.

## COMMENT ON FAILURE TO TESTIFY

In issue one, Archie contends that the trial court abused its discretion by denying his motion for mistrial after the District Attorney commented on his failure to testify.

During closing arguments at the guilt/innocence phase of trial, the District Attorney reminded the jury about a note in which Archie stated that he heard Williams's girlfriend scream on the night of the offense.

> DISTRICT ATTORNEY: But the only person who heard her scream, the only person who said she screamed was Trent Archie…Do you still hear it Trent? Do you still hear her screaming? How do you know she screamed?

> DEFENSE COUNSEL: Your Honor, I object. I have to move for a mistrial.

> DISTRICT ATTORNEY: Because you were there that night.

> TRIAL COURT: Approach the bench.

DEFENSE COUNSEL:  Judge, I move for a mistrial.  It's an improper jury argument.

TRIAL COURT: Sustained.

DEFENSE COUNSEL:  I'm going to ask that you -- in front of the jury, instruct Mr. Weeks to not ever -- to refrain from ever --

TRIAL COURT:  You can't ask him questions.

DISTRICT ATTORNEY:  I didn't.  I'm making argument.

TRIAL COURT: You can't do that.

DISTRICT ATTORNEY:  Judge, I've done it before.

The trial court sustained the objection and ordered the jury to disregard the argument, but denied Archie's motion for mistrial.  The trial court further instructed the District Attorney not to engage in the argument again.

At a hearing on Archie's motion for new trial, defense counsel testified that, when making the complained of argument, the prosecutor turned towards the defense table, pointed, stepped towards Archie, and raised his voice.  The district attorney has never challenged the accuracy of this testimony or the description of the events that occurred at trial.

### Improper Comment on Archie's Failure to Testify

"A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination."  *Smith v. State*, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.).  A comment on a defendant's failure to testify arises where "the language used was manifestly intended or was of such a character

that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Cruz v. State,* 225 S.W.3d 546, 548 (Tex. Crim. App. 2007).

The State argues that the prosecutor's argument was merely a rhetorical question intended to respond to Archie's attempts to distance himself from the offense and discredit Willis. We disagree.

Even a rhetorical question can become a comment on a failure to testify when coupled with the lack of an explanation. *See Wolfe v. State*, 917 S.W.2d 270, 280 (Tex. Crim. App. 1996). In *Bird v. State*, 527 S.W.2d 891 (Tex. Crim. App. 1975), during closing arguments at the guilt stage of trial, the prosecutor looked at Bird and said, "*Jerry Joe Bird is a machinist and well capable of manufacturing such a thing* [a gun silencer]. *And if he didn't manufacture it, where did you get it.*" *Bird*, 527 S.W.2d at 893. In *Hicks v. State*, 525 S.W.2d 177 (Tex. Crim. App. 1975), the prosecutor stood behind Hicks, raised his voice, looked at Hicks, and said, "But there is somebody that we haven't heard from in this case. And I think you all know who it is." *Hicks*, 525 S.W.2d at 178-79. In both cases, the prosecutor's argument, combined with physical actions, "was of such a character that the jury would naturally and necessarily take it to be a comment on the appellant's failure to testify." *Bird*, 527 S.W.2d at 894-95; *see Hicks*, 525 S.W.2d at 180.

We conclude that the District Attorney's argument in this case, coupled with his physical actions, was of "such a character that the jury would naturally and necessarily take it to be a comment on [Archie's] failure to testify." *Bird*, 527 S.W.2d at 894-95; *see Hicks*, 525 S.W.2d at 180.

## Abuse of Discretion

Because the trial court sustained Archie's objection and granted his request for an instruction to disregard, the "only adverse ruling - and thus the only occasion for making a mistake - was the trial court's denial of the motion for mistrial." *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Thus, "the proper issue is whether the refusal to grant the mistrial was an abuse of discretion."[2] *Id.* at 77; *see Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). We consider the: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie*, 221 S.W.3d at 700; *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

"Prejudice is clearly the touchstone of the first factor." *Hawkins*, 135 S.W.3d at 77. In *Brown v. State*, 814 S.W.2d 477 (Tex. App.—Dallas 1991, pet. ref'd), the prosecutor improperly commented on Brown's failure to testify by arguing, *"Well, we don't know what he [] sounds like when he talks."* *Brown*, 814 S.W.2d at 478-79. The Dallas Court held that the comment "tainted the guilt-innocence phase" and "improperly directed the jury's attention to Brown's invocation of his right not to testify." *Id.* at 480. The natural and necessary implications of the prosecutor's comments include (1) disrupting the jury's orderly evaluation of the evidence, (2) causing prejudice to the jury's decision-

---

[2] Although the parties address harmless error analysis, the issue before us is not whether the error from the prosecutor's improper argument was harmless. *See Hawkins v. State,* 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *see also Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007).

making, and (3) denying Brown's right to a fair and impartial trial. *Id*. The District Attorney's argument in this case was highly prejudicial for the same reasons.

The trial court did, however, instruct the jury to disregard the argument and included curative instructions in its jury charge. In *Campbell v. State*, 900 S.W.2d 763 (Tex App.—Waco 1995, no pet.), the prosecutor commented on Campbell's failure to testify by arguing "Everything puts this man in possession of this check. Explained? Yes, it's explained. He hadn't explained it, but we'll explain it." *Campbell*, 900 S.W.2d at 766. The trial court instructed the jury that:

> The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

*Id*. at 769. Before voir dire, the trial court instructed the panel that any "comments made by the attorneys would not be considered evidence." *Id*. "[W]hen the court read the instructions to the jury before they left to deliberate, the court instructed the jurors only to consider evidence that had actually been admitted in their deliberations." *Id*. This Court held that these instructions adequately mitigated the harm caused by the improper comment. *See id*.

The trial court's instructions in this case are virtually identical to those in *Campbell*. In addition, the jury charge contains the following instruction:

> The United States and Texas Constitutions provide that a defendant may elect to not testify in his own behalf if he chooses. If the defendant has

elected to not testify, you are instructed that you cannot and must not refer to or allude [to] that fact during your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

Nevertheless, "[m]istrial is the appropriate remedy when…the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'" *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). The District Attorney called attention to the absence of evidence that Archie alone could provide. *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) ("A remark that calls attention to the absence of evidence which only the defendant could supply will result in reversal."). The trial court's curative instructions were not likely to have prevented Archie from being improperly prejudiced by the District Attorney's argument.

Additionally, the evidence in this case is not so strong that Archie would necessarily have been convicted absent the District Attorney's improper argument. *See Archie*, 221 S.W.3d at 700. Willis was the only witness to the offense, but his credibility had been impeached. Willis admitted that he lies a lot and lied to the police about the murder. On cross-examination, defense counsel asked, "You've lied to the police 27 different times about 27 different events, is that correct?" Willis responded, "Yes, sir." He admitted that he was capable of making up stories and would do so to cover for himself. Other than Willis's testimony, the record contains no other direct evidence establishing that Archie shot Anthony Williams with a firearm as alleged in the indictment and the indirect evidence, while significant, was not overwhelming. The

prejudice stemming from the District Attorney's improper argument is thus emphasized by the nature of the State's evidence.

Accordingly, we conclude that the trial court abused its discretion by denying Archie's motion for mistrial. We sustain issue one and need not address Archie's remaining issues. *See* TEX. R. APP. P. 47.1. We reverse Archie's conviction and remand this cause to the trial court for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Reversed and remanded
Opinion delivered and filed December 16, 2009
Publish
[CRPM]