

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0189-10

**TRENT ARCHIE, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## WALKER COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

Trent Archie, the appellant, was convicted by a jury of murder, and the judge assessed

punishment at forty years' imprisonment. In a published opinion, the Tenth Court of Appeals

in Waco reversed the appellant's conviction and remanded the cause to the trial court,

concluding that the trial court abused its discretion by denying the appellant's motion for a

mistrial.[1]  In its petition for discretionary review, the State Prosecuting Attorney (SPA) argues that the court of appeals erred when it found that the prosecutor improperly commented on the appellant's failure to testify during his closing argument.  Moreover, even assuming the prosecutor's argument was improper, the SPA contends, it was within the trial court's discretion to deny the motion for mistrial.  We granted the SPA's petition for discretionary review to address these issues, and we now reverse.

## FACTS AND PROCEDURAL POSTURE

### At Trial

The appellant and the victim, Anthony Williams, were competing drug dealers in the Huntsville area.  In the early morning hours of October 9, 2004, the appellant shot Williams through a window at Williams's home while his girlfriend, Angela Kizzee, and their child were in the room.  Dixie Willis, the appellant's co-defendant, was the primary witness for the State.  He testified that the appellant wanted to steal drugs and money from Williams and that the appellant was in possession of a 12-gauge shotgun.  The two parked their car at a friend's house, started walking, and eventually made their way to Williams's house.  The plan was for the appellant to distract Williams by calling him outside so that they could talk while Willis was to go inside the house through the back door to steal the drugs and money.  Should Williams "get[ ] tripping," then the appellant was to shoot Williams to "slow him

---

[1]    *Trent Archie v. State*, 311 S.W.3d 556 (Tex. App.—Waco 2009) (hereinafter "Trent Archie").

down." Willis testified that as he approached the back of the house in pursuit of the plan, he heard a gunshot and took off running, and the appellant followed soon after.

Because Willis was an accomplice to the murder, his testimony required corroboration.[2] There was other evidence in the record to support Willis's description of the events tending to connect the appellant with the offense. For example, Vince Johnson testified that the appellant called him shortly after the murder and told him that Williams had been shot and that the appellant needed to find Willis and the car. Several days after the murder, the police attempted to stop the appellant for a routine traffic violation in a car belonging to his girlfriend, and the appellant fled on foot, evincing a consciousness of guilt for an offense greater than a mere traffic infraction. Jessica James, a witness who lived near the appellant's father in Houston, testified that she overheard the appellant say that he had "cancelled a guy through a window" because "he was moving in on his turf." Willis's girlfriend, Ashley Wyatt, testified that she and her roommate found the shotgun that Willis testified the appellant had been carrying on the night of the murder hidden in a closet in their home.[3] The appellant was heard in phone conversations from the jail giving Willis

---

[2] *See* TEX. CODE. CRIM. PROC. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

[3] Wyatt also testified that Willis told her that "me and Trent [the appellant] killed somebody." An accomplice's out-of-court statement may not be used to corroborate him for purposes of Article 38.14, *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). Still, Willis's out-of-court statement did not *itself* have to be corroborated under Article 38.14, *Bingham v. State*, 913 S.W.2d

instructions to bury the murder weapon and to keep quiet about what had happened. Finally, Paul Lewis, a jail informant, was initially passing "kites," or letters written in jail, between the appellant and Willis. In one of these kites, the appellant wrote that Kizzee was sitting on the bed while Williams was standing in front of the window, and that Kizzee screamed when Williams was shot—information that presumably only Kizzee and the shooter would know.

During closing argument at the guilt-innocence phase of the trial, the prosecutor reminded the jury about the kite in which the appellant stated that he had heard Kizzee scream on the night of the offense:

> [PROSECUTOR]: But the only person who heard her scream, the only person who said she screamed was Trent Archie. Do you still hear it, Trent? Do you still hear her screaming? How do you know she screamed?

> [DEFENSE COUNSEL]: Your Honor, I object. I have to move for a mistrial.

> [PROSECUTOR]: Because you were there that night.

> TRIAL COURT: Approach the bench.

> [DEFENSE COUNSEL]: Judge, I move for a mistrial. It's an improper jury argument.

> TRIAL COURT: Sustained.

> [DEFENSE COUNSEL]: I'm going to ask that you – in front of the jury, instruct Mr. Weeks to not ever – to refrain from ever –

> TRIAL COURT: You can't ask him questions.

---

208 (Tex. Crim. App. 1995), and the jury was entitled to regard it as independent evidence of the appellant's guilt, as long as it was corroborated as required by TEX. R. EVID. 803(24), *Bingham v. State*, 987 S.W.2d 54 (Tex. Crim. App. 1999).

[PROSECUTOR]: I didn't. I'm making argument.

TRIAL COURT: You can't do that.

[PROSECUTOR]: Judge, I've done it before.

* * *

TRIAL COURT: The objection is sustained and the jury is ordered to disregard [the prosecutor's] argument to which the objection was sustained.

[DEFENSE COUNSEL]: And a motion for mistrial –

TRIAL COURT: Denied.  Other instructions?

[DEFENSE COUNSEL]: I ask that you instruct that that doesn't happen again.

TRIAL COURT: [The prosecutor] is so instructed.

Later, at a hearing on the appellant's motion for new trial, defense counsel testified that, as the prosecutor was making the objected-to argument above, he had "turned from the jury, faced defense counsel table and pointing, taking a step or two towards [the appellant]," asked the objected-to questions.  The SPA does not challenge the accuracy of this description.  The jury found the appellant guilty, and he appealed.

## In the Court of Appeals

On appeal, the appellant raised the denial of his motion for mistrial.  The court of appeals held that the prosecutor's argument, coupled with his physical actions, constituted an improper comment on the appellant's failure to testify in violation of his state and federal

rights against self-incrimination.[4] Having found the argument improper, the court of appeals went on to address whether the trial court abused its discretion in refusing to grant a mistrial. The court of appeals found that the argument was highly prejudicial, that any curative instructions would not have ameliorated the prejudice, and the evidence was not so strong that the appellant would necessarily have been convicted absent the improper argument.[5] Accordingly, the court of appeals reversed the appellant's conviction and remanded the cause to the trial court.[6]

## ANALYSIS

### The Law

Commenting on an accused's failure to testify violates his state and federal constitutional privileges against self-incrimination.[7] Such a violation occurs when "the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."[8]

Because the trial court sustained the appellant's objection and instructed the jury to

---

[4] *Trent Archie*, *supra*, at 559.

[5] *Id.* at 560-61.

[6] *Id*. at 561.

[7] *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001).

[8] *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007).

disregard the argument, "[t]he only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial."[9] Thus, "the proper issue is whether the refusal to grant the mistrial was an abuse of discretion."[10] To evaluate whether the trial court abused its discretion in denying a mistrial for improper jury argument, this Court, in *Hawkins v. State*,[11] adopted the three factors from *Mosley v. State*,[12] which balance: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).[13] "Mistrial is the appropriate remedy when . . . the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'"[14]

**Was the Argument a Comment on Failure to Testify?**

In the State's first ground for review, the SPA argues that the court of appeals

---

[9]

*Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).

[10]

*Id*. at 77.

[11]

*Id*.

[12]

983 S.W.2d 249 (Tex. Crim. App. 1998).

[13]

*Mosley v. State*, *supra*; *Julius Archie v. State*, 221 S.W.3d 695 (Tex. Crim. App. 2007).

[14]

*Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004).

misconstrued *Bird v. State*,[15] and *Hicks v. State*,[16] when it found that the prosecutor's argument constituted reversible error. The SPA contends that the prosecutor's argument was simply a summation of the evidence and alluded to record evidence already before the jury, *i.e.*, the kite in which the appellant wrote that Kizzee screamed when Williams was shot.[17] Kizzee herself testified that she was in her bedroom sitting on the bed while Williams was standing in front of the window at the time he was shot. Thus, it is the SPA's position that the prosecutor's argument simply referred back to the kite that was read aloud during the course of the trial, thus inviting the jury to examine the record to determine who was the only person, besides Kizzee, present when she screamed. The reasonable deduction from the evidence, according to the SPA, is that it was the appellant.

*Bird* and *Hicks* stand for the proposition that an argument, combined with physical actions, can be of such a character that the jury would naturally and necessarily take it to be a comment on the appellant's failure to testify. The SPA takes issue with the court of appeals's reliance on these cases. According to the SPA, *Bird* and *Hicks* are distinguishable from the instant case because the arguments in those cases invited the jury to go outside the record to furnish an answer to the questions posed, but in this case, the prosecutor's argument

---

[15] 527 S.W.2d 891 (Tex. Crim. App. 1975).

[16] 525 S.W.2d 177 (Tex. Crim. App. 1975).

[17] Lewis, the jailhouse informant, read from one of the letters that the appellant wrote him while they were incarcerated. The letter stated: "Where Ol' Boy was shot they heard his girl scream. She was sitting on the bed while he was standing by the window."

was a reasonable deduction from evidence already in the record. However, we agree with the court of appeals that at least portions of the prosecutor's argument in this case, coupled with his actions, went beyond the bounds of invoking a logical inference from the record evidence and strayed into impermissible territory.

The prosecutor's first assertion obviously referred to the kite in which the appellant stated that he heard Kizzee scream on the night of the murder.[18] The last question that the prosecutor directed to the appellant might well have been construed by the jury as a rhetorical question,[19] not meant to emphasize his failure to testify during trial, but simply to illustrate that only the shooter could have been privy to the information revealed in the kite. This much constituted permissible jury argument—a reasonable deduction from the record evidence.

However, the questions posed by the prosecutor in between clearly go beyond asking the jury to infer that the answer to these questions can be found in the evidence in the record.[20] These questions go more immediately to the appellant's present state of mind as he sat in the courtroom, seeming to ask whether he presently harbors a guilty conscience for

---

[18] "But the only person who heard her scream, the only person who said she screamed was Trent Archie."

[19] "How do you know she screamed?" The jury could infer the answer to this particular rhetorical question from the kite, and thus, it did not necessarily invite the jury to go beyond the record and penalize the appellant for failing to answer it from the witness stand.

[20] "Do you still hear it, Trent? Do you still hear her screaming?"

what transpired on the night of the murder. These questions could be answered only by the appellant, and the asking of these questions, coupled with the prosecutor's act of turning from the jury to face the defense counsel table, pointing, and taking a step or two towards the appellant, directly highlighted the fact that the appellant did not personally take the stand to testify. We think the jury could only have construed this as an invitation to go beyond the inference deriving from the kite to consider the appellant's failure to testify, perhaps to express remorse, from the witness stand. Thus, we agree with the court of appeals to the extent that we hold that at least that part of the prosecutor's argument was improper.

## Abuse of Discretion?

In its second ground for review, the SPA argues alternatively that, even assuming that the prosecutor's argument was an improper comment on the appellant's failure to testify, the trial court did not abuse its discretion in denying the motion for mistrial under the *Mosley* factors. The court of appeals correctly found that "[b]ecause the trial court sustained [the appellant's] objection and granted his request for an instruction to disregard,"[21] it did not err in the sense that it admitted evidence it should not have. Instead, the "only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial."[22] The question becomes whether, balancing the *Mosley* factors, the trial court abused its discretion in failing to grant the mistrial motion. We hold that the court of

[21] *Trent Archie, supra*, at 559.

[22] *Id.*

appeals erred to hold that the trial court abused its discretion.

The first *Mosley* factor looks at the severity of the misconduct, or in other words, the magnitude of the prejudicial effect of the prosecutor's remarks. The court of appeals found the prosecutor's remarks in this case to be "highly prejudicial" because they "(1) disrupt[ed] the jury's orderly evaluation of the evidence, (2) caus[ed] prejudice to the jury's decision-making, and (3) den[ied] [the appellant's] right to a fair and impartial trial."[23] But the question is not *whether* the prosecutor's improper questions during his final argument had these consequences, but rather, the extent to which they did—the "severity" or "magnitude" of the prejudice they likely caused. Because the improper questions were embedded within other remarks that invited the jury to draw a *legitimate* inference from information contained in the appellant's kite, we think the magnitude of the prejudice was concomitantly diminished. We do not think that the extent of prejudice was so great here as necessarily to render a firm and timely curative instruction inefficacious.

Under the second *Mosley* factor, the reviewing court considers the character of the measures adopted to cure the misconduct. In this case, the trial court sustained the objection to the prosecutor's argument and immediately instructed the prosecutor that he could not "ask [the appellant] questions." After a discussion at the bench, the trial court also ordered the jury to "disregard [the prosecutor's] argument to which the objection was sustained." Additionally, in its final charge, the trial court instructed the jurors on the appellant's right

---

[23] *Id*. at 560.

to remain silent and their duty not to comment on or allude to the appellant's failure to testify. The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury.[24]

The court of appeals nevertheless held that these curative instructions were not likely to have obviated the prejudice inherent in the prosecutor's improper argument.[25] The only justification that the court of appeals offered in support of this holding, however, was that the prosecutor's argument "called attention to the absence of evidence that [the appellant] alone could provide."[26] This will be true, of course, of any comment on the accused's failure to testify—by definition. If the fact that an improper argument reminded the jury that the accused did not take the witness stand would always suffice to completely undermine an instruction to disregard, then no such instruction would ever be found to be efficacious. In our view, the improper questions posed by the prosecutor in this case, while exceeding the legitimate inference from the record that the appellant must have been the shooter because only he knew that Kizzee screamed, were not so indelible that the jury would simply ignore the trial court's specific and timely instruction to disregard them.

Lastly, under *Mosley*, the reviewing court looks to the certainty of conviction absent the misconduct. The court of appeals held that the evidence in this case was "not so strong

---

[24] *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

[25] *Trent Archie, supra*, at 561.

[26] *Id*.

that [the appellant] would necessarily have been convicted absent [the prosecutor's] improper argument."[27] The court of appeals reasoned that the credibility of the accomplice, Willis, had been impeached because he admitted that he lied initially to the police several times in order to cover up and ameliorate his involvement in the murder, and, apart from Willis's testimony, the record contained no direct evidence establishing that the appellant shot Williams.[28] The indirect evidence, in the court of appeals's view, while significant, was not overwhelming.[29]

But we find the evidence to support the appellant's conviction to be fairly compelling. Notwithstanding his admission that he has lied in the past, Willis's testimony gave the jury a detailed description of what happened on the night of the murder, pinpointing the appellant as the shooter. There was ample evidence to corroborate his accomplice testimony. James testified that she overheard the appellant admit that he "cancelled a guy in Huntsville through a window" because "he was moving in on his turf." Williams was indeed shot through his bedroom window, with his girlfriend and child sitting on the bed in front of him. Furthermore, Lewis read the appellant's kites to the jury, detailing the appellant's plan to conceal his involvement in the murder and describing Kizzee sitting on the bed and screaming when Williams was shot on the night of the murder. The jury was authorized to convict the appellant as a party to the offense. Even if it doubted the veracity of some of

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

Willis's testimony, given the other evidence connecting the appellant to the offense, the jury would likely have found beyond a reasonable doubt that the appellant was guilty of complicity in the offense, even if he was not the shooter as Willis maintained. In our view, the evidence supporting the conviction was strong, and the jury would almost surely have convicted the appellant regardless of the prosecutor's improper comment during his closing argument.

On this state of the record, the court of appeals erred to conclude that the trial court abused its discretion. The magnitude of the prejudice caused by the prosecutor's two improper questions, embedded as they were within an invitation to the jury to draw a legitimate inference from the record, was not so great that a jury would necessarily have discounted the trial court's firm instructions to disregard them. It seems unlikely that the jury would have ignored the court's explicit instructions and convicted the appellant, not on the compelling evidence introduced against him, but because he failed to take the witness stand to explain himself. Under these circumstances, we hold that it was well within the trial court's discretion to deny the appellant's motion for mistrial.

**CONCLUSION**

The court of appeals did not err to conclude that at least two of the rhetorical questions posed by the prosecutor directly to the appellant during his final argument constituted an improper comment on his failure to testify. However, the court of appeals did err to hold that, considering the factors described in *Mosley v. State*, the trial court abused its discretion

in denying the appellant's request for a mistrial. Accordingly, we reverse the judgment of the court of appeals and remand the cause for that court to address the appellant's remaining claim of trial error on appeal.[30]

FILED:     June 8, 2011
PUBLISH

---

[30] On appeal, the appellant raised two other points of error. In one, he challenged both the legal and factual sufficiency of the evidence to support his conviction. In another, he challenged the admissibility of testimony and evidence from Lewis, the jailhouse informant. The court of appeals addressed the appellant's legal sufficiency claim and found that the evidence was legally sufficient to support his conviction. *Trent Archie*, *supra*, at 558. On remand, the court of appeals need not address the appellant's factual sufficiency claim, in light of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). But still extant is the appellant's remaining point of error regarding the admission of testimony and evidence from the jailhouse informant. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").