

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00133-CR

BRANDON BERNARD BATTLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 220th District Court
Bosque County, Texas
Trial Court No. CR 14972

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Brandon Bernard Battle, charged with possession of at least one gram but less than four grams of methamphetamine, waived a jury and elected to present his entire case to the trial court. Found guilty, Battle entered a plea of "true" to the enhancement allegations, which raised his sentence to that of an habitual offender, and he was sentenced to twenty-five years' imprisonment.[1]

Battle has filed an appeal, raising three issues for determination. He alleges that the evidence is legally insufficient to support his conviction, that the evidence is factually insufficient to support his conviction, and that the judgment of conviction erroneously reflects that Battle was convicted of a first degree felony and not the third degree felony of which he was actually convicted. We affirm Battle's conviction.

I.      Facts of the Case

Misti Millican Black[2] was a passenger in an automobile that was involved in a collision with another car. Apparently, Black (who had an outstanding arrest warrant on theft by check charges) fled the scene and was being sought by the Clifton, Texas, Police Department when she turned herself in. She explained that immediately prior to the collision, she had purchased illicit drugs and did not want to be found with them on her person. Clifton Police Chief Trace Hendricks began an exchange with Black and convinced her to assist the police department in drug investigations in exchange for leniency on a charge of "evading arrest or running from the police."

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3

[2]Throughout the record, the parties often make reference to this person as "Misti Millican."

Black and some peace officers went to Black's apartment, and Black proceeded to use her cell phone to call two people whom she professed to know were in the business of selling drugs. In these phone conversations, she requested that each of the call recipients deliver drugs to her apartment. Among the two Black called was Battle, whom Black indicated she had known for about fifteen years and from whom she said she had previously purchased drugs. Black first communicated with Battle by text message and then spoke with him by telephone, asking him to bring her a "teener" (1/16th of an ounce) of drugs. Sheriff's Deputy Darren Glenn (at that time, a policeman with the Clifton police force) and two other peace officers listened in on the call, and Glenn indicated that he recognized Battle's voice. Black, Glenn, and the other two peace officers testified that during this call, Battle said that he needed to first put on some clothes and would then bring the requested methamphetamine.

Black also called a second person, Kevin Williams, requesting the delivery of methamphetamine. As things developed, Williams appeared at Black's apartment before Battle and was immediately taken into custody, handcuffed, and taken to be held in the restroom of the apartment so his apprehension by the police would not be evident if Battle appeared.

Battle then arrived and accompanied Black into the apartment, Black saying that she needed to get the $170.00 purchase price of the methamphetamine from her purse. As the two were standing in the kitchen, Glenn stepped into the hallway and yelled out his identity as a member of law enforcement and directed Battle not to move. In the words of Black, Battle immediately "proceeded to turn around, get close to the wall by where the television was and -- so he could throw his body that way behind the television." Although Black (nor any of the three

3

peace officers present) did not see narcotics in Battle's hand, she saw his hand go behind the television set. Black indicated that she had never placed methamphetamine in that location, not having any reason to do so. The police found a package of methamphetamine behind the television set; it is that methamphetamine that is the basis of the proceedings against Battle.

Glenn testified that he and three other law enforcement officers had gone to Black's apartment to participate in the methamphetamine purchase sting operation. Glenn overheard Black's telephone conversation with Battle and read the cell phone text messages that they exchanged, and he recognized Battle's voice. Glenn went on to say that before Battle or Williams arrived, he had made a thorough search of Black's apartment in the area where the illicit drugs were eventually located and had found no methamphetamine there. He said that at the time Battle was first apprehended, he was carrying the methamphetamine in his shirt. After Battle arrived in the apartment, Glenn and one of the other law enforcement officers tackled Battle and threw him to the floor beside the television set after a short struggle. Two baggies of methamphetamine were found behind the television set in the area where Battle was subdued. Glenn was certain that the methamphetamine had been carried by Battle when he entered Black's apartment.

The other law enforcement officers present (Clint Pullin and Casey Wilks, both with the Bosque County Sheriff's Office) each testified fairly substantially in accord with the testimony of Glenn. A video recording of Battle's take-down and arrest was played for the trial court.

Black admitted that she later posted a Facebook message that the methamphetamine found in her apartment actually belonged to her and not to Battle. However, she testified that this was

4

not the truth, maintaining that she had made that posting only because she was afraid of Battle, whom she said had threatened her life.

Battle testified in his own defense, indicating that he believed that Black's telephone call to him was in the vein of an invitation for him to have sex with her and that he came to her apartment solely to engage in sex, not for the purpose of selling her drugs. During his testimony, Battle acknowledged the veracity of the criminal convictions used to enhance his punishment.

## II.    Sufficiency of the Evidence

In his brief, Battle raises points as to both the factual sufficiency and the legal sufficiency of the evidence to sustain his conviction.

For well over a decade, courts in Texas were mandated by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), to review the quality and quantity of evidence to determine whether it was factually sufficient as well as legally sufficient to sustain a conviction.

Under a factual sufficiency standard, we could find the evidence insufficient in two ways: (1) that the evidence supporting the conviction was "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict was against the great weight and preponderance of the evidence. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

Under a legal sufficiency review standard, we review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Under that standard, it is the duty of the reviewing court to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Battle acknowledges that the Texas Court of Criminal Appeals disemboweled the concept of the ability of appellate courts to conduct a factual sufficiency review on the basis that there had become no meaningful distinction between the legal sufficiency standard of review and the factual-sufficiency standard, blurring the two so much that those two standards had become indistinguishable. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). However, Battle points out that the opinion in *Brooks* was only a plurality opinion (not a majority one) and that it was subject to a great deal of legal criticism. From this, and from the fact that the Court of Criminal Appeals has granted review of a case dealing with this issue, Battle maintains that the issue of the viability of the factual sufficiency standard of review remains unsettled. *See Walker v. State*, No. PD-1429-14 (Tex. Crim. App. Oct. 14, 2015). However, Battle's contention does not take into account a footnote in a 2011 case appealed from the Tenth Court of Appeals in which the Court of Criminal Appeals unanimously directed that "[o]n remand, the court of appeals need not address the appellant's factual sufficiency claim, in light of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)." *Archie v. State*, 340 S.W.3d 734, 742 n.30 (Tex. Crim. App. 2011). The unanimity of that opinion indicates that the Court of Criminal Appeals has no intention of reinstating the factual sufficiency standard, and we need not parse the same evidence under the factual sufficiency standard. Therefore, we overrule Battle's contention that the evidence is not factually sufficient to sustain the judgment of conviction.

Returning to a review of the legal sufficiency of the evidence, to identify the essential elements of the crime, we look to the hypothetically correct jury charge of the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (holding that sufficiency of the evidence

6

should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Under a hypothetically correct jury charge analysis, Battle committed a third degree felony if it is proven that (1) Battle (2) knowingly or intentionally (3) possessed at least one gram but less than four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010). Here, not only is the sufficiency of the underlying charge measured by the standard of the hypothetically correct jury charge, the elements of the enhancements to the punishment are subjected to the same test.

The evidence that Battle committed the offense of which he was charged is set out above. To summarize that evidence, it was shown that (1) Black and three peace officers heard a telephone conversation and read a text message exchange between Black and Battle wherein Black requested Battle to bring some quantity of methamphetamine to her apartment so she could purchase it; (2) within minutes of the communications between Battle and Black, Battle appeared at Black's apartment; (3) the peace officers and Black all testified that the peace officers had made a cursory check of Black's apartment before Battle arrived and found no illicit drugs in the apartment; (4) Black testified that she had no illicit drugs in the apartment when the call was made; (5) Battle was tackled by peace officers shortly after he arrived in Black's apartment and, during the ensuing struggle, was in the area around Black's television set; (6) Black saw Battle's hand go behind the

7

television set during his tussle with peace officers; and (7) after the struggle between peace officers and Battle concluded, plastic baggies of methamphetamine were located on the floor behind the television set, between it and a piece of furniture, this being within Battle's reach during his struggle with peace officers.

There is no direct evidence that the methamphetamine was on Battle's person. All of the evidence is circumstantial. The lack of direct evidence, however, does not damage the ability of the trier of fact to make a finding against Battle.

> Because fact[-]finders are permitted to make reasonable inferences, both direct and circumstantial evidence are probative to a case and it is possible for circumstantial evidence alone to be enough to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Miles v. State*, 165 S.W. 567, 570 (Tex. Crim. App. 1914)). The standard of review for sufficiency of the evidence is the same whether the evidence is direct or circumstantial. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Not every fact presented must directly indicate the defendant is guilty, but the cumulative force of the evidence can be sufficient to support a finding of guilt. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

*Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

Although there was no direct evidence that Battle actually intentionally possessed the methamphetamine, which was the basis of the criminal charge against him, the trial court, as the finder of fact, could rely on the circumstantial evidence adduced to have concluded beyond a reasonable doubt that Battle possessed the methamphetamine mentioned in his indictment.

Battle did not contest the existence of the prior convictions, which were the basis of the enhancements of the penalty with which he was assessed.

We reject Battle's claim that the evidence was legally insufficient to support his conviction.

8

### III. Error in Recitation in Judgment of Conviction?

Battle pointed out that his judgment of conviction indicated that he had been convicted of a first degree felony, but although the punishment was enhanced due to previous convictions, the crime of which he was convicted (possession of at least one gram but less than four grams of methamphetamine) is only a third degree felony.

The State concurred with this point, and we have been supplied with a nunc pro tunc judgment of conviction dated April 1, 2016, indicating that Battle was convicted of a third degree felony and not the first degree felony reflected in the original judgment.

Accordingly, Battle's third point of error has become moot, and we overrule it.

We affirm the conviction.

Bailey C. Moseley
Justice

Date Submitted:     March 4, 2016
Date Decided:       April 27, 2016

Do Not Publish

9