**Opinion issued March 15, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00793-CR

_____

**JULIO CERVANTES-SEGURA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 180th District Court
Harris County, Texas
Trial Court Case No. 1445818

## MEMORANDUM OPINION

A jury convicted appellant, Julio Cervantes-Segura, of the first-degree felony offense of aggravated robbery and assessed his punishment at ten years'

confinement.[1] In his sole issue on appeal, appellant contends that the trial court erred in refusing to grant his motion for mistrial made after the prosecutor argued that appellant's failure to testify during the punishment phase indicated that he "did not respect the jury's guilty verdict."

We affirm.

## Background

On October 21, 2014, the complainant, Laura Arizpe, was at home around noon with her son, Christian Ayala, and her fourteen-year-old adopted daughter, Perla Izaguirre. Arizpe and Ayala were downstairs, while Izaguirre was asleep in her bedroom upstairs. Ayala saw two men walking toward the front door while putting gloves on. Because Ayala was on probation at the time and he was concerned that the men might be police officers, he asked Arizpe to open the door and see what the men wanted. Ayala hid in the kitchen, but he could still see what was happening at the front door.

Three men came inside the house and threatened Arizpe with handguns. Ayala, who has an older brother and who had never seen any of the men before, heard the men demand, "Where is your son?" Arizpe testified that the men were looking for money and jewelry. Two of the men forced Arizpe upstairs, while the third man briefly stayed downstairs before following the other men and Arizpe

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a) (West 2011).

2

upstairs. Ayala identified this man in court as appellant. After the men went upstairs, Ayala noticed that one of the men had left a handgun lying on an open Bible. Ayala picked up the Bible, with the handgun tucked inside, and left the house to find a neighbor who would allow him to call 9-1-1. When Ayala left the house, he saw a man sitting inside a white truck and talking on a cell phone. Ayala was able to call 9-1-1, and he informed the dispatcher that three men had broken into his house, and he also described the man in the white truck in front of his house.

Once upstairs, the men tied Arizpe's and Izaguirre's hands and feet with zip-ties. The men searched upstairs for money and jewelry, and they took a chain necklace, as well as Arizpe's and Izaguirre's cell phones. Around the time the police officers arrived at Arizpe's house, the robbers ran out of the house. Officers apprehended one of the men immediately. The other two men jumped the fence and ran from Arizpe's house, and the driver of the white truck quickly drove away. Deputy G. Rodriguez, with the Harris County Constable's Office, radioed other officers and provided a physical description of the two men who had jumped the fence and fled Arizpe's house.

On the way to Arizpe's house, Deputy J. Reese encountered "one of the suspects walking on the side of the road" one block from Arizpe's house. This individual, later identified as appellant, matched the description of one of the men Deputy Rodriguez had seen jumping the fence at Arizpe's house. Deputy Reese

3

stated that appellant was out of breath and extremely sweaty, and Reese immediately stopped his patrol car to investigate. Appellant said, "It's okay. It's okay," and placed his hands in the air, and Deputy Reese, who knew that the suspects had jumped a fence, saw that appellant had a cut on his hand. Deputy Reese placed appellant under arrest. During the search incident to arrest, he discovered two pieces of jewelry in appellant's pockets: a gold chain necklace with a pendant in the shape of the letter "F" and a man's ring that had a horseshoe on it.

Arizpe identified the chain necklace discovered in appellant's pocket as a necklace that her son had given to her husband, both of whom were named Francisco. Izaguirre also identified the necklace as belonging to Arizpe's husband, and she testified that the ring found in appellant's pocket belonged to Arizpe's husband as well. Officers showed photo-arrays to Arizpe, Ayala, and Izaguirre, and all three of them identified appellant as one of the robbers.

Appellant testified on his own behalf at the guilt-innocence phase. He stated that he worked at a body shop and that a client contacted him about a job and, during the course of their meeting, drove him to the neighborhood where Arizpe lived. A disagreement ensued between appellant and his client, and the client threw appellant out of his car. Appellant stated that he was not familiar with the neighborhood because he has not lived in Houston for very long. He testified that he removed his chain necklace and his ring and placed them in his pockets to secure them in this

4

unfamiliar neighborhood. He saw police cars quickly driving through the area, but appellant kept walking until he was detained by Deputy Reese. Appellant did not present any photographs depicting him wearing the jewelry that was discovered in his pockets, but he did offer photographs that showed him wearing similar rings and necklaces.

The jury found appellant guilty of the offense of aggravated robbery. During the punishment phase, the State presented evidence that appellant had been arrested for possession of a controlled substance in February 2014, and that he had been released on bond for the possession offense when he committed the robbery offense in October 2014. Appellant also stipulated that he had previously been convicted of misdemeanor driving while intoxicated in 2012.

Appellant did not testify during the punishment phase. He called one of his cousins and his former mother-in-law to testify on his behalf. Both of these witnesses indicated that appellant had lived in the Houston area for several years before the offense.

During argument, appellant's counsel argued that community supervision was an appropriate punishment. The State argued that the jury should not award community supervision and focused on the fact that appellant committed the robbery while on bond for another offense. The State then recounted appellant's testimony

5

from the guilt-innocence phase concerning why he had been in the area of Arizpe's home at the time of the robbery. The following exchange then occurred:

[The State]: [Appellant] got up on the stand. He wouldn't even answer one question that I asked him. Is three blocks a long way to walk? Wouldn't answer it. Do you know Houston well? He said, no, I don't know Houston well. I have only lived here for two years. He said, I only lived here for two years. I visited a few time[s] before that, but I only lived here for two years. Miss Marin stated he lived with her for at least four years. And his cousin said he has been here around seven years.

So we know he is not telling the truth whenever he says he lived here for two years. He took the stand and he insulted your intelligence. He insulted this courtroom. And he wants to maintain his innocence today that he does not agree with you.

The Court: You have about three minutes left.

[Defense]: We object. That's a comment on the Fifth Amendment right to remain silent.

The Court: All right. That's sustained.

[Defense]: And we would ask the jury disregard the last comment of the Prosecutor.

The Court: Ladies and gentlemen, please disregard the last comment by the Prosecutor.

[Defense]: And we move for a mistrial.

The Court: That's denied.

The State did not mention appellant's testimony during the remainder of its argument, nor did it again reference appellant's decision not to testify during the punishment phase. In the punishment-phase jury charge, the trial court included an

6

instruction informing the jury that appellant had elected not to testify during the punishment phase, that the jury could not refer to that decision during its deliberations, and that the jury could not consider that decision for any purpose.

The jury assessed appellant's punishment at ten years' confinement. This appeal followed.

## Improper Argument

In his sole issue, appellant argues that the trial court erroneously refused his motion for mistrial made after the prosecutor, during the punishment phase closing argument, argued that appellant's failure to testify in the punishment phase indicated that he did not respect the jury's guilty verdict.

### A.    *Standard of Review*

Proper jury argument generally falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). To determine if the prosecutor made an improper jury argument, we must consider the entire argument in context and not merely isolated sentences. *Johnson v. State*, 416 S.W.3d 602, 615 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In most instances, an instruction to disregard the remark is sufficient to cure the error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). When the trial court sustains a defendant's

objection to an allegedly improper argument and gives an instruction to disregard but denies the defendant's request for a motion for mistrial, the only issue to consider on appeal is whether the trial court erroneously denied the motion for mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004); *see also Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007) ("*Archie I*") (holding that court of appeals erred by analyzing whether trial court's failure to grant mistrial after prosecutor commented on defendant's failure to testify during punishment phase constituted harmful error under Rule of Appellate Procedure 44.2(a)); *Benefield v. State*, 389 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (following *Archie I*).

We review a trial court's refusal to grant a motion for mistrial for an abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011) ("*Archie II*"). To evaluate whether the trial court abused its discretion in denying a motion for mistrial based on an improper jury argument in the punishment phase, the Court of Criminal Appeals has adopted a test that balances (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Hawkins*, 135 S.W.3d at 77; *see also Archie I*, 221 S.W.3d at 700 (noting that whether trial court should have granted mistrial "involves most, if not all, of the same considerations that attend a harm analysis"). Granting a motion for

8

mistrial is the appropriate remedy when "the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie II*, 340 S.W.3d at 739 (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)); *Hawkins*, 135 S.W.3d at 77 ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

### B.    Analysis

A prosecutor's comment on a defendant's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Archie II*, 340 S.W.3d at 738. A defendant "has a separate Fifth Amendment privilege not to testify at either the guilt or punishment phases of trial." *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). If the defendant waives the privilege at the guilt-innocence phase, that does not waive the privilege for the punishment phase. *Id.* "Thus, a comment on the defendant's silence at the punishment phase is improper even if the defendant testified at the first phase of trial." *Id.*

Appellant testified on his own behalf during the guilt-innocence phase of trial, but he did not testify during the punishment phase. During the argument portion of the punishment phase, the prosecutor summarized appellant's testimony during the

9

guilt-innocence phase, including his testimony that he did not know Houston well and that he had only lived in Houston for two years.  The following then occurred:

| | |
|---|---|
| [The State]: | [Appellant] said, I only lived here for two years.  I visited a few time[s] before that, but I only lived here for two years.  Miss Marin stated he lived with her for at least four years.  And his cousin said he has been here around seven years. |
| | So we know he is not telling the truth whenever he says he lived here for two years.  He took the stand and he insulted your intelligence.  He insulted this courtroom.  *And he wants to maintain his innocence today that he does not agree with you*. |
| The Court: | You have about three minutes left. |
| [Defense]: | We object.  That's a comment on the Fifth Amendment right to remain silent. |
| The Court: | All right.  That's sustained. |
| [Defense]: | And we would ask the jury disregard the last comment of the Prosecutor. |
| The Court: | Ladies and gentlemen, please disregard the last comment by the Prosecutor. |
| [Defense]: | And we move for a mistrial. |
| The Court: | That's denied. |

(Emphasis added.)  The prosecutor did not mention appellant's guilt-innocence phase testimony or his decision not to testify during the punishment phase again during argument.  The jury charge included an instruction that appellant had elected not to testify during the punishment phase and, therefore, the jury could not refer to that fact during its deliberations or take it into consideration for any purpose.

10

We first consider whether the prosecutor's remark was a comment on appellant's right not to testify during the punishment phase. The prosecutor made the remark after summarizing appellant's testimony from the guilt-innocence phase, which falls within the ambit of permissible punishment-phase argument. *See Randolph*, 353 S.W.3d at 893–94 (stating that prosecutor may comment on testimony defendant gives during guilt-innocence phase and "that is not construed as a comment on the defendant's choice to remain silent during the punishment stage"). Assuming, however, that the prosecutor's remark was a comment on appellant's failure to testify during the punishment phase, we consider the severity of the misconduct, or the magnitude of the prejudicial effect of the prosecutor's remarks. *See Archie II*, 340 S.W.3d at 740. The question is not whether the prosecutor's remarks had prejudicial consequences, but the extent of the prejudice. *See id.* at 741.

Here, assuming that the prosecutor made a remark concerning appellant's failure to testify during the punishment phase, that remark was brief and isolated. *See Archie I*, 221 S.W.3d at 700 (noting that prosecutor's impermissible comment on failure to testify was brief). Because the remark was "embedded within other remarks that invited the jury to draw a *legitimate* inference," the magnitude of prejudice from the statement is diminished. *See Archie II*, 340 S.W.3d at 741 (emphasis in original). We conclude that the extent of prejudice from the

11

prosecutor's statement, if improper, was not so great as to necessarily render a timely curative instruction ineffective. *See id.*

We next consider the curative measures taken by the trial court. *See id.* Here, after the prosecutor made the challenged statement, the trial court notified the prosecutor concerning how much time he had remaining. Defense counsel then objected that the prosecutor's statement was an improper comment on appellant's failure to testify, and the trial court sustained the objection and, at defense counsel's request, instructed the jury to "disregard the last comment by the Prosecutor." In addition to the instruction to disregard, which was given immediately after the challenged statement, the trial court included a written instruction in the jury charge informing the jury that appellant had elected not to testify during the punishment phase and, as a result, the jury could not consider that fact for any purpose or refer to appellant's decision not to testify during deliberations.

"The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Id.* (considering trial court's "specific and timely" instruction to disregard improper statements as well as written instruction in jury charge reminding jurors of "their duty not to comment on or allude to the [defendant's] failure to testify" in determining that improper statements "were not so indelible" that jury would ignore trial court's instructions); *Archie I*, 221 S.W.3d at 700 (concluding that oral instruction to disregard and written

12

instruction not to consider failure to testify "sufficiently ameliorated any potential harm" from improper statements); *Hawkins*, 135 S.W.3d at 84 (noting that analysis of this factor should consider instructions given in jury charge). We conclude that the prosecutor's comment, if improper, was not so "offensive or flagrant" as to render the trial court's curative instructions ineffective. *See Wesbrook*, 29 S.W.3d at 116 ("Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . .").

Finally, we consider the certainty of the punishment assessed absent the misconduct, or the likelihood of the same punishment being assessed. *See Archie I*, 221 S.W.3d at 700. At the punishment phase, defense counsel argued that community supervision was appropriate for appellant, and, on appeal, appellant argues that his punishment "was far from certain," in part because he was undisputedly eligible for community supervision, his character witnesses vouched for his good character and ability to comply with community supervision terms, and no one was injured during the robbery.

In addition to the evidence from the guilt-innocence phase of appellant's involvement in the robbery of Arizpe and her family—in which appellant and two other men who were brandishing firearms broke into Arizpe's house, tied up Arizpe and Izaguirre, who was fourteen years old at the time, and stole jewelry belonging to Arizpe's husband before fleeing the house—the State presented evidence in the

punishment phase concerning appellant's criminal history. Appellant had a prior conviction for misdemeanor driving while intoxicated and, in February 2014, he had been arrested for possession of a controlled substance. That charge was still pending, and appellant had been released on bond, when he committed the robbery offense against Arizpe in October 2014. *See Hawkins*, 135 S.W.3d at 85 (noting, in analyzing third factor, that defendant had extensive criminal history and that "some [offenses] were committed before the punishment on others had expired"). The jury assessed appellant's punishment at ten years' confinement, which is near the bottom of the statutory punishment range for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.32(a) (West 2011) (providing that punishment range for first-degree felony is confinement for five to ninety-nine years or life). We conclude that it is likely the same punishment would have been assessed against appellant even in the absence of the State's comment. *See Archie I*, 221 S.W.3d at 700.

When considering all three factors, we conclude that the trial court could have reasonably believed that its prompt instruction to disregard the prosecutor's statement was effective and that appellant suffered no prejudice from the statement. *See Hawkins*, 135 S.W.3d at 85. We therefore hold that the trial court did not abuse its discretion in refusing to grant appellant's request for a mistrial. *See Archie I*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 85.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).