**Opinion issued September 16, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-23-00653-CR

———————————————

**PERCY SEMIEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1681014**

---

## MEMORANDUM OPINION

Appellant Percy Semien was convicted of murder and sentenced to sixty-five years' imprisonment. In five issues, Semien challenges his conviction. We affirm.

## I.     Background

Semien shot Jaden LaCour at a Houston Citgo station late in the evening on June 14, 2020. That day, Semien and Bobby Blake Okoro attended a graduation

party for Felix Ugorji. Evidence[1] shows that from around 9:00 p.m. to 11:00 p.m. that evening, Semien's, Felix's, and Okoro's phones were in an area consistent with the Felix residence.

At 11:40 p.m., Semien's phone made a forty-second call to Javonte Vining's phone. At the time, Semien's phone and Okoro's phone were in an area consistent with the Citgo station, and Javonte's phone was in an area consistent with LaCour's residence.

At 11:48 p.m., Semien's phone made a twenty-two-second call to Javonte's phone; Javonte's phone was now nearer to the Citgo station.

At 11:50 p.m., Javonte's phone made a twenty-two-second call to Semien's phone; both men's phones were then in the area consistent with the Citgo station, and it appears Javonte's phone made the call while he and LaCour were parked by the gas pumps at the station.

Per surveillance video from the Citgo station (which was seven minutes slower than the actual time), at around 11:51 p.m., LaCour exited Javonte's vehicle and Semien and Okoro walked up. Okoro stayed behind the vehicle while Semien spoke with LaCour by the side of the vehicle. After speaking for around fifty

---

[1] Using cell phone usage and location data, police were able to create a chronology and mapping of events that occurred on June 14, 2020, which was presented to the jury via a demonstrative slideshow.

2

seconds, LaCour appears to raise a hand, and Semien began running away with LaCour lunging his direction. While he was starting to run away, Semien fired a pistol at LaCour. A testifying police officer described these events: "It appears Mr. LaCour raised his hand up as if he was handing something off as the second individual [Semien] was taking it from him. . . . The second individual is discharging a firearm in the direction of Mr. LaCour."

The video shows that, after Semien and Okoro ran away, LaCour took a few steps and went down to the ground. The police officer testified that a still picture taken from the surveillance video shows LaCour on the ground, and both of his hands were on the ground with nothing in them. It appears LaCour then reached for his pocket while lying down.

Evidence shows that, after the shooting, at around 12:44 a.m. on June 15, 2020, Semien's phone and Okoro's phone were at an area consistent with the Semien residence.

Police officers were dispatched to the scene shortly after the shooting and found LaCour lying on the ground with other men trying to help him. Officers found a black and silver pistol on the ground next to LaCour, within the reach of his right hand. Officers also collected over $2,000 in cash belonging to LaCour.

The pistol had a sixteen-round-capacity magazine with thirteen rounds in it and one round in the pistol's chamber. Three cartridge casings were found at the

3

scene and determined to have been fired from the same gun, which was not the pistol found next to LaCour.

LaCour was declared deceased on June 15, 2020, dying from his gunshot injuries. LaCour's autopsy revealed he had sustained two gunshot wounds, with one bullet entering through his stomach and exiting his back and the other bullet going through his right thigh.

Through their investigation, which included viewing the Citgo station surveillance video and speaking with witnesses, police developed Semien as a suspect. On September 6, 2020, a police investigator *Mirandized* and interviewed Semien. During the interview, Semien claimed to not remember much, saying he did not recall going to Ugorji's graduation party, seeing Okoro in June 2020, or going to the Citgo station. When asked why he shot LaCour, Semien denied shooting him and repeatedly denied being there, even when shown proof that he had been there, told others had identified him as being there, and informed he had been charged with murder.

Later that day, Semien made a call from jail during which he said, "I didn't have nothing to do with that crime. Didn't have nothing to do with that murder at all in no type of way possible."

4

As discussed in more detail below, Okoro testified at trial that he and Semien were approached by a stranger holding a gun at the Citgo station, and Semien shot the stranger in self-defense and to save Okoro.

During closing, Semien's counsel argued that the State did not meet its burden to disprove beyond a reasonable doubt self-defense or defense of another. The jury convicted Semien of murder and sentenced him to sixty-five years' imprisonment. Semien now appeals.

## II. Self-Defense and Defense of a Third Person

In his first and second issues, Semien contends that the evidence is legally insufficient to support the jury's rejection of Semien having acted in self-defense and defense of a third person.

## A. Standard of review and applicable law

Evidence is legally sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). In conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the verdict without substituting our judgment for that of the jury. *McPherson v. State*, 677 S.W.3d 663, 664 (Tex. Crim. App. 2023); *Dunham*, 666 S.W.3d at 482. The jury is the sole judge of the credibility and weight to be attached to witnesses' testimony. *Dunham*, 666 S.W.3d at 482. "The jury may reasonably

5

infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all the evidence or testimony proffered, and weigh the evidence as it sees fit." *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

When the defendant raises self-defense or defense of a third person, he bears the burden to produce evidence supporting the defense, but the State bears the burden of persuasion to disprove the raised issues. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) ("[T]he State's burden of persuasion 'is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt.'" (citation omitted)). Thus, the State must both prove the essential elements of the offense beyond a reasonable doubt and persuade the jury that the defendant did not act in self-defense or defense of a third person beyond a reasonable doubt. *Id.* at 609; *Rankin v. State*, 617 S.W.3d 169, 181–82 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

The jury charge provided two theories under which the jury could convict Semien of the offense of murder: (1) he intentionally or knowingly caused LaCour's death by shooting him with a deadly weapon, a firearm; or (2) he intentionally caused serious bodily injury and intentionally or knowingly committed an act clearly dangerous to human life by shooting LaCour with a deadly weapon, a firearm, causing LaCour's death. *See* TEX. PENAL CODE § 19.02(b)(1)–(2).

The charge also submitted self-defense and defense of a third person. "[D]eadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is 'justified.'" *Braughton*, 569 S.W.3d at 606 (quoting TEX. PENAL CODE § 9.02). Under the Penal Code, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). A person is justified in using deadly force if the actor would be justified in using force under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a). Similarly, a person is justified in using deadly force against another to protect a third person if the actor would be justified in using deadly force under section 9.32 and "the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33.

## B.    Analysis

Semien argues the evidence clearly establishes that he acted in self-defense and defense of a third person because of Okoro's eyewitness testimony. Okoro testified that, while his group was dropping people off after the graduation party, they stopped at the Citgo station because he wanted to buy "some cigarillos." According to Okoro, while he and Semien were walking toward the station's store,

7

a stranger (identified as LaCour at trial) approached them, pulled out a tan-colored gun, and told Okoro to step back. Okoro testified he did not know the person, and it did not appear to him that Semien knew them either. Okoro stated the stranger spoke to Semien for two or three minutes, at some point, pulling out money. Per Okoro, the stranger had his gun drawn the entire interaction. Okoro testified that the stranger then lunged toward Semien, and Semien shot the stranger in self-defense, also saving Okoro's life. Okoro testified he and Semien ran away and had not seen or spoken to each other since. Okoro denied knowing or ever communicating with Javonte. Okoro also acknowledged that when he spoke with officers in June 2020, he did not tell them the full story for how the shooting occurred because he was scared, but did say the stranger pulled out a gun and that he feared for his life.

Semien contends Okoro's account of the shooting was corroborated by the surveillance video and officer testimony that the video showed LaCour was moving toward Semien at the time of the shooting. According to Semien, the video shows Okoro stopping as they walked toward LaCour and then start backing up and shows Semien running away with LaCour following at the time of the shooting. Semien also argues that the pistol found within the reach of LaCour's right hand already had a round chambered, meaning it was ready to fire and supporting that LaCour was the aggressor. For the following reasons, we conclude the evidence supports the jury's rejection of Semien's defensive theories.

8

The surveillance video shows Semien and Okoro approached the vehicle next to which LaCour was standing. Semien walked directly up to LaCour, and Okoro stopped behind the vehicle. Nothing in the way the men moved indicates either moved backward, hesitated, or were startled, in response to LaCour drawing a gun on them. Okoro did take two small steps backward at one point, but those appear to be because he was casually moving back and forth instead of standing still, not because of something LaCour did. Okoro appeared relaxed during the fifty seconds that Semien and LaCour spoke.

Additionally, the surveillance video negates Okoro's account that a random stranger approached the men at the Citgo station. To the contrary, the video shows Semien and Okoro purposefully walking toward LaCour to speak with him. And the police investigation proved that LaCour was not a random stranger but someone riding with Javonte, whose phone had called, or been called by, Semien's phone three times shortly before the meeting, supporting a finding that the meeting was planned by the men.

Another inconsistency was that Okoro testified LaCour pulled out a tan-colored gun, but the evidence proved LaCour's pistol was black and silver. And the State's firearm expert testified that, while a round in the pistol's chamber meant someone had prepared the pistol to shoot, it was unknown when the round was

9

chambered, meaning it could have occurred long before the meeting or even when LaCour was on the ground.

The video further shows that, after LaCour and Semien spoke for around fifty seconds, LaCour appears to raise a hand, and Semien then started running away with LaCour lunging in his direction. While he was starting to run away, Semien fired a pistol at LaCour. LaCour quickly dropped to the ground, and the video shows that he did not have anything in his hands. LaCour then appeared to reach into his pocket, and police later found the pistol near LaCour's right hand. The pistol had blood on it, and DNA testing of the pistol grip provided "very strong support" that LaCour was a contributor to the DNA. Accordingly, this evidence supports a finding that LaCour did not pull out the pistol until after he was shot.

Semien argues that the quality and angles of the video do not support the foregoing description of events but support that LaCour started lunging and following Semien immediately before the shooting. We agree that the quality and angles of the video do not give a perfect, unobstructed view of what transpired. And we agree the video does show that LaCour was moving in Semien's direction at the time of the shooting. However, the video is sufficient to support that LaCour did not have a gun in his hands when he dropped to the ground after the shooting and that he reached for something in his pocket. Circumstantial evidence supports that

10

he was reaching for his pistol after the shooting because it was found next to his right hand with his blood on it.

Semien's interview with the police investigator also provided reason for the jury to reject his defensive theories. Despite the investigator showing Semien a picture of himself at the crime scene, Semien obstinately denied being there. The jury could have reasonably believed that, if Semien fired the shots to defend himself and Okoro against an aggressor who pulled a gun on them, he would have told the investigator that account instead of repeatedly denying any involvement. *See Dugar v. State*, No. 14-17-00059-CR, 2018 WL 1611645, at *4 (Tex. App.—Houston [14th Dist.] Apr. 3, 2018, no pet.) (mem. op., not designated for publication) ("The jury also had reason to doubt appellant's claim of self-defense because he did not report the shooting to police and, in his custodial interrogation, he initially denied that he had shot a gun."). Even later that day, when on a call from jail, Semien continued to deny any involvement instead of explaining he acted defensively.[2]

In sum, the jury could have reasonably rejected Semien's defensive theories because evidence contradicted material parts of Okoro's story and supported that Semien shot LaCour when he was unarmed. *See Gonzales v. State*, No. 01-23-

---

[2]  Semien challenges the believability of this evidence, noting that the officer who proved up the jail call because he recognized Semien's voice on the call also admitted that inmates sometimes use each other's "SPN numbers" and that the caller identified himself as "P. LO." These were credibility issues for the jury to resolve.

00544-CR, 2025 WL 1958112, at *3 (Tex. App.—Houston [1st Dist.] July 17, 2025, no pet. h.) (mem. op., not designated for publication) ("We agree with the State that the jury, in its role as factfinder, could have rationally rejected the appellant's self-defense claim based on credibility."); *Coons v. State*, No. 01-16-00201-CR, 2017 WL 1326079, at *4 (Tex. App.—Houston [1st Dist.] Apr. 11, 2017, no pet.) (mem. op., not designated for publication) ("The jury's decision to reject appellant's defensive claim ultimately hinged on the credibility of the witnesses."). The evidence is legally sufficient to support the jury's finding beyond a reasonable doubt that Semien murdered LaCour and its rejection of self-defense and defense of another beyond a reasonable doubt. We overrule Semien's first and second issues.

### III. Closing Argument

In his third and fourth issues, Semien contends the trial court abused its discretion, and deprived him of due process, when it failed to grant his request for a mistrial based on a statement made during the State's closing argument.

### A. Standard of review and applicable law

A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quotation omitted). It is a remedy appropriate only for a narrow class of highly prejudicial and incurable errors. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We

review a trial court's decision to deny a motion for mistrial for abuse of discretion. *Hawkins*, 135 S.W.3d at 77. When determining whether the trial court abused its discretion in denying a mistrial, we balance the three *Mosley* factors: (1) the prejudicial effect; (2) the curative measures taken; and (3) the strength of the evidence supporting the conviction. *See Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (extending factors from *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), to evaluating improper jury argument that violated defendant's constitutional rights).

## B.     Analysis

Semien complains about the State's following rebuttal argument:

Now, the only evidence that we have heard that would support self-defense, and remember the Defendant has to be justified in using self-defense in order to be able to use defense of a third person, and the only thing we have heard is [Okoro's] statement that [Semien] saved his life that day.   [Okoro] is lying, because after three years he now mysteriously has to say that on the stand?  He talked to officers after this happened.  He told you that.  He cooperated.  Deputy Davis told you that.  And he told you he didn't tell the police these things then. *But after three years he's created this ulterior reality in his mind, because he's scared of the police, because he's scared of the Defendant. He didn't want to be here, because he's scared of the Defendant.*

(Emphasis added.)  After the State made this argument, Semien objected "Outside the record," which the trial court sustained.  Semien requested an instruction to disregard, and the trial court instructed the jury to disregard "the last statement made by the Prosecutor."  The trial court then denied Semien's request for a mistrial.

13

Semien argues the State's remark that Okoro created a self-defense, defense-of-another narrative because he feared Semien "served to gut" the defenses and deprive him of due process. We disagree. Even if it were improper, which we need not decide, the State's argument that Okoro fabricated his story because he feared Semien was a relatively minor point compared to the State's other arguments based on evidence that Semien undisputedly shot and killed LaCour but then lied to police about not being involved, that Okoro did not tell police Semien had shot LaCour defensively, and that parts of Okoro's story were negated by the evidence, particularly that they were approached by a random stranger at the Citgo station. Moreover, the trial court promptly instructed the jury to disregard the objected-to argument, which we presume the jury did. *See Griffin v. State*, 571 S.W.3d 404, 417 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) ("[W]e generally presume the jury followed the trial court's instructions [and] a mistrial is required only in those 'extreme circumstances' where the prejudice is 'incurable.'" (citation omitted)).

The objected-to argument was not so egregious to be incurable by the instruction to disregard and did not cause the jury to convict Semien when it otherwise would have acquitted him, depriving him of a fair trial. Accordingly, the

trial court did not abuse its discretion by denying Semien's request for the extraordinary remedy of a mistral.[3] We overrule Semien's third and fourth issues.

## IV. Photographs and Video

In his fifth issue, Semien contends the trial court abused its discretion when it admitted over his Texas Rule of Evidence 403 objections autopsy photographs and video of the police officer performing CPR on LaCour.

### A. Standard of review and applicable law

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). This deferential standard requires that we uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court judge is given considerable latitude on evidentiary rulings. *Id.*

Generally, relevant evidence is admissible. TEX. R. EVID. 402. In pertinent part, under Rule 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the

---

[3] Moreover, even if we reviewed this issue under the harm analysis for constitutional error (which Semien argues applies notwithstanding that he made no constitutional objection in the trial court) instead of under the *Mosley* factors, we would conclude beyond a reasonable doubt that the State's argument did not contribute to Semien's conviction. *See* TEX. R. APP. P. 44.2(a).

admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010).

In determining the prejudicial effect of photographs, a court should consider the number, size, color, and detail of the photographs, whether they are gruesome and show nudity, and whether the photographed body had been altered since the crime to the appellant's detriment. *See Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000). Crime scene photographs are almost always relevant because they depict the reality of the offense and may show the manner of its occurrence. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). "If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (quotation omitted). "The considerations for determining the admissibility of audiovisual recordings under Texas Rule of Evidence 403 are generally the same as those for determining the admissibility of photographs." *Williams v. State*, No. AP-77,053, 2017 WL 4946865, at *27 (Tex. Crim. App. Nov. 1, 2017) (not designated for publication).

## B.      Analysis

Semien first complains about six photographs that show the entrance and exit gunshot wounds on LaCour's body. Semien objected to these photographs under Rule 403, arguing that any probative value of the photographs was substantially outweighed by the danger of (1) unfair prejudice because of their graphic nature, and (2) needlessly presenting cumulative evidence because a photograph of LaCour's body and a diagram of his gunshot wounds were already admitted into evidence.

We hold that the trial court did not abuse its discretion in overruling Semien's objection. The photographs are not unduly graphic but reflect the gunshot wounds on LaCour's body with little blood and in a manner not reflected on the other photograph and diagram.[4] The trial court reasonably could have concluded these photographs aided the jury in understanding precisely where and how LaCour was shot, an important fact in this close-range shooting case in which Semien is claiming self-defense. *See Heath v. State*, No. 01-19-00794-CR, 2021 WL 4095243, at *7 (Tex. App.—Houston [1st Dist.] Sept. 9, 2021, pet. ref'd) (mem. op., not designated for publication) ("The photographs were probative to show the extent of the injuries Heath inflicted on the complainants and the state of the bodies when paramedics

---

[4]      On appeal, Semien complains that two of the photographs show LaCour's buttocks and a portion of his pubic area. He did not object on this specific basis in the trial court or ask to have the nudity redacted or blurred. Regardless, these areas of LaCour's body are seen simply because of where the bullets struck him and are not depicted in a manner that would inflame or upset the average juror.

17

encountered them."). Therefore, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice or needlessly presenting cumulative evidence.

Semien next complains about the admission of a responding police officer's soundless body-camera video, showing him performing CPR on LaCour shortly after the shooting, which resulted in LaCour beginning labored breathing. Later in the video, hospital staff is seen working to save LaCour but with little ability to see LaCour in the video. At trial, Semien objected to this video under Rule 403 due to unfair prejudice because it shows LaCour dying and being cumulative of the autopsy photographs. The State responded that the video was important in the chain of events leading to LaCour's death.

We again hold that the trial court did not abuse its discretion in overruling Semien's objection. While the video does show LaCour, with his eyes rolled backward, receiving CPR, it does not depict gruesome violence and shows the scene as left by Semien after he shot LaCour and as the police found it. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) ("[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."); *Luna v. State*, No. 05-17-01188-CR, 2018 WL 3490875, at *2 (Tex. App.—Dallas July 20, 2018, no pet.) (mem. op., not designated for

18

publication) (concluding trial court did not abuse discretion admitting video of dying shooting victim receiving CPR; "the video does nothing more than reflect the gruesomeness of the offense, which is not a sufficient reason for excluding evidence"). Moreover, there is little risk of unfair prejudice arising from the video because it is undisputed Semien shot LaCour, and LaCour receiving CPR and later dying from his injuries does not affect whether Semien shot him in self-defense or not, *i.e.*, the video did make it more likely the jury would reject Semien's defenses. *See West v. State*, No. 01-18-00228-CR, 2019 WL 2750592, at *3 (Tex. App.—Houston [1st Dist.] July 2, 2019, no pet.) (mem. op., not designated for publication) (rejecting Rule 403 argument regarding audio of dying victim; "the jury was well aware that a murder had occurred and that nearby witnesses attempted life-saving efforts"). The probative value of the video was not substantially outweighed by the danger of unfair prejudice or needlessly presenting cumulative evidence.

We overrule Semien's fifth issue.

## V.    Conclusion

We affirm the judgment of the trial court.


Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

19