

# NUMBER 13-25-00158-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RUBEN TREVINO,**                                                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                   **Appellee.**

---

## ON APPEAL FROM THE 117TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Peña, West, and Fonseca
Memorandum Opinion by Justice Fonseca**

Following trial, a Nueces County jury convicted appellant Ruben Trevino of murder, a first-degree felony, and it assessed punishment at fifty years' confinement. *See* TEX. PENAL CODE § 19.02(c). Trevino appeals by three issues, arguing (1) the trial court erred by failing to instruct the jury on extraneous offenses, (2) the trial court erred by failing to grant a mistrial, and (3) he was deprived of his constitutional right to a fair trial. We affirm.

## I.  BACKGROUND

Trevino was accused of fatally shooting Carlos Vasquez on or about August 4, 2021. According to evidence adduced at trial, a shooting outside the Palace Men's Club in Corpus Christi was reported to police at around 1:30 a.m. that morning. When police arrived, they found Vasquez lying face down and unresponsive just outside the entrance to the club. He was pronounced dead at the scene.

Surveillance videos obtained by police show that Trevino arrived at the Palace around 1:07 a.m. and Vasquez arrived a few minutes later. At 1:14 a.m., Trevino walked out onto an exterior patio area, and his friend followed him. At 1:17 a.m., Trevino climbed over a wall in the patio area and into the club's parking lot. At 1:19 a.m., Vasquez was escorted out of the building by the club's doorman and its manager, and another one of Trevino's associates can also be seen exiting the building. At 1:20 a.m., Vasquez can be seen pacing around and talking on his phone directly in front of the establishment when Trevino approached from the side and fired at least three shots from a pistol in Vasquez's direction from about fifteen feet away. As the shooting began, Vasquez initially moved slowly toward Trevino and hid behind a barricade; he was able to dodge the first shots, but the last one struck him in the right upper chest and caused his death. In the surveillance videos, Vasquez does not appear to be armed.

Trevino's principal theory at trial was that he acted in self-defense. In support of this theory, he presented evidence of prior hostilities he had with Vasquez. Specifically, Ronnie Rodriguez testified that Vasquez shot Trevino during an altercation at Club Rio in Corpus Christi on April 9, 2021. Rodriguez said he has known Trevino for over five years

2

and Vasquez for over twenty years. He said the altercation started when he and Trevino saw Vasquez arrive at Club Rio with their friend's wife.

Robert Salazar, Trevino's friend of around ten years, testified that a man who "looked a little gang affiliated" came to Salazar's used car dealership shortly after the Club Rio incident and asked for Trevino. The man told Salazar that Trevino had been shot and wanted to know Trevino's address because the man "had unfinished business." Salazar declined to tell the man Trevino's address; later, Salazar warned Trevino that someone was looking for him. Salazar could not identify the man at trial.

Miranda Flores, Trevino's wife since 2006, testified she learned the day after the Club Rio incident that Vasquez was the one who shot her husband. Flores said that, according to her research, Vasquez was previously in prison for an aggravated assault and was subsequently arrested in Nueces County for another shooting on April 26, 2021. Flores further stated that five days after the Club Rio shooting, she and Trevino were awakened by a gunshot at around 2:30 in the morning, and they found a bullet hole in their garage door. After that, Trevino began carrying a gun with him and Flores traveled in a separate vehicle because she was "terrified."

Flores agreed with defense counsel that Trevino is a "good man." Later, on cross-examination, she agreed with the prosecutor that Trevino "has quite the criminal history," though she said most of his arrests occurred before their marriage.

Corpus Christi Police Department Officer John Ghezzi testified without objection that Trevino is a "documented" member of the Texas Syndicate, a street gang. Ghezzi acknowledged Vasquez had a gang-associated tattoo on his stomach; however, to his knowledge, Vasquez was not a documented gang member.

3

The jury was instructed on the law of self-defense. Trevino was convicted as charged and sentenced as set forth above, and this appeal followed.

## II.   DISCUSSION

### A.   Limiting Instruction

By his first issue, Trevino argues the trial court erred by failing to instruct the jury regarding the use of extraneous offense evidence. *See* TEX. R. EVID. 105(a) ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly."); *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001) ("Once an extraneous act has been ruled admissible, the jurors must be instructed about the limits on their use of that extraneous act if the defendant so requests. . . . [A] jury should be instructed that they are not to consider extraneous act evidence unless they believe beyond a reasonable doubt that the defendant committed that act."). This issue is based on the following colloquy which occurred during Flores's cross-examination:

> Q.   Ms. Flores, one of the last question[s defense counsel] asked you was that your husband is a good person.
>
> A.   Yes.
>
> Q.   He has quite the criminal history, doesn't he?
>
> A.   Before me.
>
> Q.   Before you?
>
> A.   Yes.
>
> Q.   Some of it during you, though; right? An assault, causes bodily injury to a family member, he's been on probation with numerous motions to revoke. Let's see, assault, causing—

4

A.    That[] wasn't him.

Q.    Assault, causes bodily injury to a family member; assault—aggravated assault, causing serious bodily injury. When did you say you were married?

A.    In 2006.

Q.    Would that have been before or after June 10th of 2006?

A.    After.

Q.    Did you know he was arrested for aggravated assault, causing serious bodily injury on June 10th of 2006?

A.    No.

Q.    Let's continue through his criminal history. Assault, causing bodily injury to a family member; assault, causes bodily injury to a family member; assault, causes bodily injury. Did you know about any of these yet?

A.    No.

Q.    Engaging in organized criminal activity, anything?

A.    They were before me.

Q.    2010, that was before you?

A.    No, 2010 was not before me, sorry.

Q.    But you weren't aware of any of that?

A.    Yes. I mean, what—what are you talking about?

Q.    Did—were you aware of his criminal history, including during the time that the two of you were married?

A.    Yes, I was.

Trevino argues that, through this colloquy, the State adduced evidence of "a slew of extraneous acts/arrests" but that "there was no evidence to 'prove them up'" and "[t]hey were simply brought forward to diminish Trevino's character under [Rule] 404(b) and no

5

other reason."[1] He further argues that "[m]uch of the State's case centered on Trevino's character, gang affiliation, and alleged propensity for violence" and that "[t]he [extraneous] arrests have no probative value or relevance to the case at hand (or the history between Trevino and Vasquez)." He appears to complain about both the lack of a limiting instruction in the written jury charge and the trial court's failure to issue such an instruction at the time the subject testimony was given.[2]

Here, defense counsel never lodged any objection to the subject testimony and never requested any limiting instruction. Accordingly, Trevino has not preserved any argument regarding the contemporaneous issuance of such an instruction, *see* TEX. R. APP. P. 33.1(a), and the trial court did not err by failing to include one in the jury charge. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (concluding "a limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction at the time the evidence was first admitted"); *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001) ("If a limiting instruction is to be given, it must be when the evidence is admitted to be effective."); *Yepez v. State*, 696 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ("If . . . the defendant fails to request a limiting instruction when evidence of extraneous bad acts and offenses is first admitted at trial, the evidence is admissible for all purposes, and the trial court is not obligated to include a limiting instruction in the jury charge."); *see also Pugh v. State*, 639 S.W.3d 72, 98 (Tex.

---

[1] Defense counsel never raised a Rule 404(b) objection.

[2] Trevino cites Texas Code of Criminal Procedure 36.14, which requires the trial court to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. He also cites *Jones v. State*, in which the Texas Court of Appeals held that "the trial court erred by failing to grant appellant's request for a limiting instruction at the time the [complained-of] photos were introduced into evidence" but that such error was harmless. 944 S.W.2d 642, 654 (Tex. Crim. App. 1996).

Crim. App. 2022) (noting "the decision to request a limiting instruction concerning the proper use of certain evidence may be a matter of trial strategy" and "an attorney might reasonably choose not to request the instruction because doing so might emphasize the evidence at issue"). Trevino's first issue is overruled.

**B.      Motions for Mistrial**

By his second issue, Trevino contends the trial court erred by denying multiple motions for mistrial made by defense counsel during the guilt-innocence phase of trial. "A mistrial is a device used to halt trial proceedings where error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Guerrero v. State*, 528 S.W.3d 796, 801 (Tex. App.—Houston [14th Dist.] 2017, no pet.). It is an appropriate remedy only in extreme circumstances for a narrow class of "highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009), *abrogated on other grounds by Becerra v. State*, 685 S.W.3d 120, 139 (Tex. Crim. App. 2024); *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Pantaleon v. State*, 699 S.W.3d 641, 650 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd) (noting that even if inadmissible testimony or other evidence comes before the jury, "our law prefers that the trial continue" unless the evidence "is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant").

We review a trial court's denial of a mistrial for abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011). A judge's decision denying a mistrial will be upheld if it was in the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). In determining whether the trial court abused its

discretion in denying a mistrial, we consider (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Archie*, 340 S.W.3d at 739. Because it is an extreme remedy, a mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored. *Ocon*, 284 S.W.3d at 884–85.[3]

Defense counsel first requested a mistrial after the above-referenced exchange between Flores and the prosecutor regarding Trevino's extraneous offenses.[4] Counsel argued that, pursuant to her motion in limine, the State was prohibited from discussing offenses over ten years old without first obtaining leave of court.[5] Counsel further represented that "a lot of [Trevino's] arrests were no-billed" and others were "dismissed" because it was actually Trevino's brother who was arrested "using [Trevino's] ID." Counsel contended that Flores's testimony was "extremely prejudicial" and that no "instruction at this point would work." After counsel's motion, the trial court inquired as to whether Trevino's criminal history had "been proven" yet, and the parties agreed it had not. The following day, a police lieutenant testified outside the presence of the jury that, based on his analysis of fingerprints contained in law enforcement records, Trevino was

---

[3] In its brief, the State does not address the merits of the mistrial motions but instead argues only that the issue is not preserved because Trevino never obtained any explicit adverse ruling from the trial court. *See* TEX. R. APP. P. 33.1(a)(2)(A). For purposes of this memorandum opinion, we assume but do not decide that the trial court implicitly denied the mistrial motions by resuming the trial. *See id.* (providing that an implicit adverse ruling preserves an issue for appeal).

[4] After the above-quoted colloquy, the prosecutor asked Flores additional questions, and defense counsel objected to one of them on basis of attorney-client privilege. A discussion then ensued regarding that objection, and the trial court excused the jury. Only at that point did defense counsel request a mistrial due to the extraneous offense testimony. For purposes of this analysis, we assume but do not decide that the request was timely. *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) ("A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.").

[5] Trevino does not provide a record reference to any motion or order in limine. We observe that the record contains motions in limine filed by Trevino and the State but no order granting those motions.

8

in fact arrested five times for assault between 2004 and 2010, but there was no record of Trevino ever being arrested for engaging in organized criminal activity, as the prosecutor suggested during his cross-examination of Flores. The prosecutor conceded Trevino was not arrested for that particular offense and offered to "go on the record with [Flores] and tell her . . . that there was no arrest and that I was incorrect in asking that question."[6]

Trevino's counsel also requested a mistrial based on a series of events which occurred after the jury was excused for lunch on Friday, March 21, 2021, the fifth day of trial. At that time, a juror requested to speak with the court. She asked whether the jury could "work through lunch" because "we've been sitting idle all morning," and she "can't [take] another week off of work" because she is a nurse and "if I don't work, I don't get paid." The juror noted that the venire panel was told at voir dire the trial would take five days, and that if she knew it would take longer, she would have asked to be excused. The juror stated: "I mean, no disrespect to you-all, but you-all have wasted like 15 hours of our time while we've done nothing. Actually, I know you have to do things, and I respect that for the client, but our time is not being respected." Another juror then made substantially the same complaints.

The trial court apologized and explained that the jury had been left idle that morning because there was "a restraining order case . . . involving two small children, and so the Court had to take that up . . . for the children's safety." Defense counsel then moved for mistrial, asserting both jurors had pointed to her during their complaints and speculating

---

[6] The prosecutor also suggested that the court instruct the jury to disregard his question regarding organized criminal activity. No such instruction was given.

that all the jurors are "feeling the same way."[7] When the jury returned from lunch, the trial court advised them as follows:

> And so here we are Friday afternoon, it is 1:30, and clearly, we will not be able to finish this case here today. And so it would require you, as all the jurors on this matter, to return to court in another week, and the trial could possibly go on for an additional week. And so I need to ask all of you if the delay, coming back perhaps March 31, we're not certain of the date, but if you having to come back when—when you—I know the attorneys have represented to the Court and the Court represented to you that the trial would be a week long, clearly, it's taking longer. . . .
>
> Do any of you feel that having to come back for an additional week of trial, potentially an additional week, would cause you the inability to render a fair or impartial verdict? And, if so, if you feel that way, if you could raise your right hand and let me know?

Only the second complaining juror raised his hand; he was excused from further service and replaced by an alternate, and the trial resumed.

On appeal, Trevino argues the first complaining juror "should have been brought forth individually to [be] question[ed] on the fairness and impartiality issue." He cites authority establishing that "where a sitting juror makes statements outside of deliberations that indicate bias or partiality, such bias can constitute jury misconduct that prohibits the accused from receiving a fair and impartial trial." *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002). Overall, he argues "[t]he trial court abused its discretion in failing to grant the mistrial, considering the record as a whole and the totality of the circumstances: the improper extraneous acts admitted (involving the mistaken arrest), as well as the multiple juror complaints and lack of voir dire questions about the length of trial."

---

[7] Counsel later renewed her motion on the basis that Trevino was deprived of a speedy trial, due process, and the "ability to question on self-defense issues." These issues are not part of this appeal.

We find the trial court was well within its discretion to deny Trevino's motions for mistrial. First, as noted, defense counsel did not object to the extraneous offense testimony, and she did not request an instruction to disregard; therefore, no measures "less drastic" than a mistrial were explored or adopted.[8] *See Ocon*, 284 S.W.3d at 884–85. Moreover, the severity of the misconduct, if any, was minimal. As Trevino acknowledges, the only arrest discussed by the prosecutor which was not supported by evidence was engaging in organized criminal activity. That particular offense was mentioned only a single time during Flores's testimony, and the prosecutor later acknowledged he was mistaken. The State did not emphasize or repeat the error but instead offered to correct it on the record and invited the court to instruct the jury to disregard it. And there was already testimony adduced without objection that Trevino was a documented member of a criminal street gang. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (noting the improper admission of evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"). We find it vanishingly unlikely that the jury's verdict was influenced by the prosecutor's single mention of a non-existent organized criminal activity arrest. *See Archie*, 340 S.W.3d at 738.

---

[8] The Texas Court of Criminal Appeals has stated that, because an objection to testimony, a request for an instruction to disregard, and a motion for mistrial

> seek judicial remedies of decreasing desirability for events of decreasing frequency, the traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence—that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. However, this sequence is not essential to preserve complaints for appellate review. The essential requirement is a timely, specific request that the trial court refuses.

*Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (footnotes omitted).

Second, we cannot conclude the juror's statements indicated bias or partiality so as to warrant a mistrial. *See Granados*, 85 S.W.3d at 235. Trevino cites *Ocon*, in which appellant's trial counsel claimed to overhear someone saying: "They've got me on this damn jury. I don't know why the hell they picked me. I would rather be on a double ax murderer th[a]n this damn case [sic]. It's dirty, disgusting. No, unless we convict the bastard today, then I'm kind of stuck here." 284 S.W.3d at 883. The Texas Court of Criminal Appeals held that, though this "may have constituted juror misconduct," the trial court did not err in denying a mistrial because "the State rebutted the presumption of harm by submitting that there was no way to verify defense counsel's account of the conversation and by reminding the judge that the jurors had been instructed not to talk about the case." *Id.* at 885. The Court specifically noted that "while questioning jurors about allegations of misconduct is a helpful tool for measuring the necessity for a mistrial, it is not required"; rather, "it is incumbent upon the party moving for a mistrial to request an inquiry of the jurors." *Id.*

Here, the juror's remarks revealed her frustration at the slow pace of the trial—a frustration which, by all accounts, was justified given the representations made at voir dire regarding the expected length of trial and her financial situation. However, the remarks do not tend to indicate she was biased or partial in favor of either party. Indeed, when the trial court asked if serving for another week would render any of the jurors unable to render a fair and impartial verdict, the juror at issue declined to raise her hand. To the extent Trevino believes the juror should have been questioned individually about bias or partiality, it was incumbent upon his counsel to make that request.[9] *See id. Ocon*

---

[9] Trevino argues that "defense counsel did request further questioning of the jurors individually,"

is distinguishable because it involved conduct indicating the juror harbored particular animosity toward the defense; in any event, the court did not err by denying a mistrial in that case. *See id.* at 883. The same result holds here. We overrule Trevino's second issue.

## C.    Right to Fair Trial

By his third issue, Trevino contends he was deprived of his constitutional right to a fair trial because the juror referenced above was allowed to remain on the jury. Citing *Freeman v. State*, he suggests the juror became "disabled" and should have been removed on that basis. *See* 838 S.W.2d 772, 774 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) (concluding the trial court's finding that a juror "was disabled due to an emotional problem" was supported by the record and was not erroneous); *see also* TEX. CODE CRIM. PROC. art. 36.29(a) (providing "[n]ot less than twelve jurors can render and return a verdict in a felony case" but if a juror "becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict"); *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (noting "disability" includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror," such as physical illness, mental condition, or emotional state).

This issue fails for multiple reasons. First, as the State notes, Trevino did not object at trial to the juror remaining on the jury, did not assert she was disabled or disqualified, and did not complain about the lack of a fair trial on any grounds; thus, there is nothing

---

but we can locate no such request in the record. For its part, the State suggested that the court could individually question jurors if any of them indicated they were unable to be impartial, though it objected to having them questioned individually by counsel.

13

for us to review. *See* TEX. R. APP. P. 33.1(a). Second, Trevino points to nothing in the record indicating the juror had any physical or mental condition which prevented her from "fully and fairly performing the functions of a juror." *See Reyes*, 30 S.W.3d at 411. Trevino appears to believe the juror at issue was biased or partial against him, but "[a] juror may not be discharged because of bias or prejudice against the defendant." *Freeman*, 838 S.W.3d at 774 (citing *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990)). Finally, Trevino cites no authority, and we find none, establishing that the seating of a disabled juror necessarily deprives a defendant of a fair trial. *See* TEX. R. APP. P. 38.1(i).

Trevino also contends by this issue that he was deprived of a fair trial due to a ten-day recess which was taken after the fifth day of trial, during the defense's case-in-chief. He argues the recess harmed him because his self-defense theory "was an affirmative one" and the jurors' "recollection of the evidence and testimony was crucial." The only authority he cites is *Hoppes v. State*, in which the First District Court of Appeals held the trial court did not err by denying a mistrial after adjourning the jury for two weeks so a juror could take a vacation. 725 S.W.2d 532, 534 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (noting "appellant was concerned with the juror[s'] ability to retain 'this mass of material over a two-week vacation period'" but concluding the trial court acted within its "broad discretion in the conduct of a trial" by ordering the recess). In this case, the record does not demonstrate any reason for the subject recess, but it also does not show that defense counsel objected to it or that Trevino suffered any harm because of it. *See* TEX. R. APP. P. 33.1(a). Further, Trevino cites no authority, and we find none, establishing that a defendant's constitutional right to fair trial is implicated in this situation. *See id.* R. 38.1(i). We overrule Trevino's third issue.

### III. CONCLUSION

The trial court's judgment of conviction is affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
25th day of June, 2026.